(No. 54118.— ▮▮▮▮▮▮)

THE PEOPLE *ex rel.* TYRONE FAHNER, Attorney General, Appellant, v. CARRIAGE WAY WEST, INC., *et al.*, Appellees.

*Opinion filed November 13, 1981.—Rehearing denied January 29, 1982.*

302

**304**

Tyrone C. Fahner, Attorney General, of Springfield (Thomas M. Genovese and Stephen P. Juech, Assistant Attorneys General, of Chicago, of counsel), for the People.

Malato & Stein, P.C., of Chicago (Robert S. Minetz and Stephen H. Malato, of counsel), for appellee Sportsman's Country Club, Inc.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago (Perry L. Fuller, D. Kendall Griffith, and Stephen R. Swofford, of counsel), for appellees Midwest Country Club and Cherry Hills Country Club, Inc.

McDermott, Will & Emery, of Chicago (Samuel Weisbard, of counsel), for appellees Cog Hill Golf & Country Club, Inc. *et al.*

Sidley & Austin, of Chicago (Frederic F. Brace, Jr., and William J. Nissen, of counsel), for appellee Carson Pirie Scott & Co.

Ancel, Glink, Diamond, Murphy & Cope, P.C., of

Chicago, for appellee Harold Friedman.

Hogan & McNulty, of Chicago (William E. McNulty, of counsel), for appellee Gleneagles Country Club, Inc.

Herschbach, Tracy, Johnson, Bertani & Wilson, of Joliet (Louis R. Bertani, John L. O'Brien, and Michael W. Hansen, of counsel), for appellee New Community Enterprises Sales, Inc.

Rothschild, Barry & Myers, of Chicago (Edward I. Rothschild and Melvin I. Mishkin, of counsel), for appellee Timber Trails Country Club, Inc.

Levy & Erens, of Chicago (Jay Erens and James M. Lawniczak, of counsel), for appellee Westgate Valley Country Club, Inc.

Klein, Thorpe & Jenkins, Ltd., of Chicago (E. Kenneth Friker, of counsel), for appellee George Gee.

Michael W. Rathsack, of Chicago, for appellee Steven Gianakas, d/b/a Hickory Hills Country Club.

Sonnenschein, Carlin, Nath & Rosenthal, of Chicago (Kenneth H. Hock, of counsel), for appellee Chicagoland Golf Association.

Mitchell, Russell & Kelly, of Chicago (Thomas J. Russell, of counsel), for appellee Silver Lake Country Club, Inc.

Schumacher, Jones, Vallely, Kelly & Olson, of Chicago (Frank G. Siepker, of counsel), for appellee Al Lehman.

Martin, Craig, Chester & Sonnenschein (Edward Atlas, of counsel), for appellees Old Oak, Inc., and Villa Olivia Country Club, Inc.

JUSTICE SIMON delivered the opinion of the court:

The Attorney General filed a two-count civil complaint

in the circuit court of Cook County on behalf of the People of the State of Illinois under the Illinois Antitrust Act (Ill. Rev. Stat. 1975, ch. 38, par. 60—7(4)). The complaint alleged that the defendants had entered into a conspiracy to fix the greens fees and golf-cart-rental prices at various golf courses the defendants operated, in violation of section 3(1)(a) of the Act (Ill. Rev. Stat. 1975, ch. 38, par. 60—3(1)(a)). While some defendants answered the complaint, denying its allegations, others moved to dismiss the complaints for failure to state a cause of action. The circuit court granted the motion and dismissed the complaint with leave to amend within 60 days pursuant to sections 45 and 48 of the Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, pars. 45, 48). The Attorney General, instead of amending the complaint, asked this court for leave to file a petition for writ of *mandamus* or for a supervisory order. When that motion was denied, the Attorney General returned to the circuit court and sought leave to file an amended complaint instanter, but leave was denied. The cause was later dismissed. The appellate court affirmed (88 Ill. App. 3d 297), and this court granted leave to appeal under Rule 315 (73 Ill. 2d R. 315).

The complaint at issue, after reciting the jurisdiction of the court and the proper venue, defined its terms and named the defendants, who are operators of golf courses in the Chicago area open to the public upon the payment of a fee, known in the trade as a "greens fee." The complaint charged that, except for the illegal activity, all the defendants would have been competitors for the over five million people who had paid greens fees to them in the time covered by the complaint. Also named as a defendant was the Chicagoland Golf Association, an Illinois not-for-profit corporation which claimed all the defendants as members. The association was charged with holding periodic meetings and circulating the minutes of those meetings to all members of the association.

The substance of count I of the complaint was that from November 1970 to and through 1975 the defendants conspired to fix prices. It alleged:

"19. Defendants and co-conspirators have entered into an agreement, understanding, and concert of action the substantial terms of which were to fix, control and maintain the rate of greens fees charged to the general public.

20. That in furtherance of the aforesaid unlawful combination and conspiracy, the defendants and co-conspirators employed the following means and methods, among others:

A. Beginning at least as early as October 1970, and from time to time thereafter, (the exact times being unknown to the plaintiff) the defendants and co-conspirators met at various locations in Cook County and discussed and agreed upon the rate of greens fees to be charged to the general public;

B. On or before March 26, 1974, the exact date being unknown to plaintiff, defendants and co-conspirators agreed to fix a date when reduced winter rates would be discontinued and summer rates would be imposed;

C. Defendants and co-conspirators not in attendance at the aforementioned meetings were informed of the discussions and agreements reached at these meetings by receiving printed minutes prepared by the Secretary of the Association."

A similarly worded count II charged the fixing of golf-cart-rental prices. The claimed effect of each agreement was the suppression of competition. The complaint sought injunctive relief and the maximum penalty of $50,000 against each of the defendants.

The purpose of pleadings is to present, define and narrow the issues and limit the proof needed at trial. Pleadings are not intended to erect barriers to a trial on the merits but instead to remove them and facilitate trial. The

object of pleadings is to produce an issue asserted by one side and denied by the other so that a trial may determine the actual truth. (*Fleshner v. Copeland* (1958), 13 Ill. 2d 72, 77; *Warnes v. Champaign County Seed Co.* (1955), 5 Ill. App. 2d 151, 156; *McKinney v. Nathan* (1954), 1 Ill. App. 2d 536, 545.) Perhaps the best measure of a complaint's sufficiency, then, is whether the defendant is able to answer the essential allegations. Most of the defendants were able to do so here, but because some moved instead to dismiss the complaint, further analysis is necessary.

Illinois is a fact-pleading State. This means that although pleadings are to be liberally construed and formal or technical allegations are not necessary, a complaint must, nevertheless, contain facts to state a cause of action. (Ill. Rev. Stat. 1975, ch. 110, par. 31.) Which facts? The complaint is deficient when it fails to allege the facts necessary for the plaintiff to recover. (*Fanning v. LeMay* (1967), 38 Ill. 2d 209, 212.) "But it is a rule of pleading long established, that a pleader is not required to set out his evidence. To the contrary, only the ultimate facts to be proved should be alleged and not the evidentiary facts tending to prove such ultimate facts." *Board of Education v. Kankakee Federation of Teachers Local No. 886* (1970), 46 Ill. 2d 439, 446-47.

To pass muster a complaint must state a cause of action in two ways. First, it must be legally sufficient; it must set forth a legally recognized claim as its avenue of recovery. When it fails to do this, there is no recourse at law for the injury alleged, and the complaint must be dismissed. (See, *e.g., Ritchey v. Maksin* (1978), 71 Ill. 2d 470, 475; *Pierce v. Carpentier* (1960), 20 Ill. 2d 526, 530-31.) Second and unlike Federal practice, the complaint must be factually sufficient; it must plead facts which bring the claim within the legally recognized cause of action alleged. If it does not, the complaint must be dismissed. See, *e.g., Van Dekerkhov v. City of Herrin* (1972), 51 Ill. 2d 374, 376-77.

The complaint here charged a conspiracy to fix prices in

violation of section 3(1)(a) of the Illinois Antitrust Act (Ill. Rev. Stat. 1975, ch. 38, par. 60—3(1)(a)). There can be no question of its legal sufficiency. Price fixing is a *per se* violation of our antitrust statute, and by stating the business of the defendants to be golf course operators, the complaint took them out of the statutory exemption provided by section 5(12) (Ill. Rev. Stat. 1975, ch. 38, par. 60—5(12)).

As for factual sufficiency, the ultimate facts needed to prove a violation of section 3(1)(a) are agreements among those who would otherwise be competitors for the purpose or with the effect of fixing the price charged for any goods or service received. These ultimate facts were alleged in paragraph 19 of the complaint with respect to charges for greens fees and in paragraph 23 for golf-cart rentals. In addition, paragraph 20(B) alleged an agreement, entered into prior to March 26, 1974, upon a date on which higher summer rates would be placed in effect.

The complaint, in paragraph 20, also pleaded overt acts by co-conspirators in furtherance of the agreement to fix prices: meetings of co-conspirators to discuss specific prices and then minutes of those meetings circulated to the participants in the conspiracy who had agreed to adhere to the price fixing, but who were not present at the meetings. Under Federal antitrust law, which the Illinois Antitrust Act adopts (Ill. Rev. Stat. 1975, ch. 38, par. 60—11), no overt act is required to prove a price-fixing conspiracy. (*United States v. Socony-Vacuum Oil Co.* (1940), 310 U.S. 150, 224 n.59, 84 L. Ed. 1129, 1168 n.59, 60 S. Ct. 811, 845-46 n.59; *United States v. Trenton Potteries Co.* (1927), 273 U.S. 392, 402, 71 L. Ed. 700, 707, 47 S. Ct. 377, 381; *Nash v. United States* (1913), 229 U.S. 373, 378, 57 L. Ed. 1232, 1236, 33 S. Ct. 780, 782.) The portion of the complaint alleging overt acts was therefore technically unnecessary. Its presence, however, alleging the manner in which the price-fixing conspiracy was carried out, bolsters the conclusion that the complaint satisfactorily pleaded facts sufficient to show

that the plaintiff was not simply paraphrasing the Illinois Antitrust Act. The complaint, on its face, shows that there is a valid issue which, if denied, calls for a trial.

The defendants claim that the complaint does not describe any specific act which evidenced the entry of any particular defendant into the conspiracy. But evidence need not be laid out in the complaint, only the ultimate fact that the defendants agreed to fix prices. The trial, not the pleadings, is the proper place to look for evidence of how and when the illegal agreement was made. As for the details of the agreement, the only terms that had to be pleaded were the object —the fixing of greens fees and golf-cart rentals —and the effect—the suppression of competition. These were alleged as well as the date on which higher summer rates would be instituted. Such specifics as when, where, or through what agent defendants came to agree were not required in the complaint.

The defendants also claim that the complaint's terms are conclusional. The line between conclusions of law and ultimate facts is sometimes dim. (*Van Dekerkhov v. City of Herrin* (1972), 51 Ill. 2d 374, 376.) Suffice it to say that it is enough for a complaint under the Illinois Antitrust Act to allege that defendants agreed to fix prices in a specific area of commerce (in this case greens fees and golf-cart-rental fees) and suppressed competition. That will start the suit by putting the defendants on notice of the plaintiff's legal theory and underlying facts. Further facts can be developed in discovery and at trial.

The Attorney General's complaint stated a cause of action and should not have been dismissed. Actually, much of the foregoing analysis is unnecessary because of this court's disposition of *People v. Crawford Distributing Co.* (1972), 53 Ill. 2d 332. In that case an indictment was challenged which bore a striking similarity to the complaint here. Like the complaint, the indictment in *Crawford Distributing* recited the proper jurisdiction and venue,

defined its terms, and named the defendants, who were the principal beer distributors in Macon County. Also named but as an unindicted co-conspirator was the Beverage Wholesaler's Association. Like the complaint in this case, the indictment charged a violation of section 3(1)(a) of the Illinois Antitrust Act. Specifically, the defendants were charged with conspiring and agreeing to fix the wholesale price of beer. The indictment alleged that the conspirators:

"(a) held periodic meetings to plan and carry out the terms of the aforesaid conspiracy;

(b) increased and fixed the price of beer sold at wholesale by the Defendant Distributors to Retailers located in Macon County, Illinois."

The court held that the indictment was sufficiently specific because it enabled those charged to prepare a defense and precluded further prosecutions for the crime charged. 53 Ill. 2d 332, 346.

If an indictment of this type satisfies the more rigid procedural requirements of a criminal prosecution, a complaint similarly worded should satisfy the requirements of the Civil Practice Act. Both the indictment and complaint notify the defendants of the cause of action brought and the facts upon which the cause is predicated, so that the defendants can prepare a defense. The difference lies in the adequacy of the notice required. Criminal charges must be more specific because criminal defendants have a much narrower array of discovery devices with which to prepare for trial. Compare Ill. Rev. Stat. 1979, ch. 38, pars. 114—9, 114—10, 114—13, and 73 Ill. 2d Rules 411, 412, and 414, 415, with Ill. Rev. Stat. 1979, ch. 110, par. 58, and 73 Ill. 2d Rules 201 through 219.

The appellate court, however, thought that *Crawford* was of little consequence because, unlike this case, it involved only a single class of defendants. The appellate court's theory, which the defendants assert here, was that the complaint charges two different classes of defend-

ants—one consisting of those who attended the meetings at which prices were fixed and the other consisting of those who were absent from the meetings but who learned of the prices when they received copies of the minutes. The appellate court concluded that the complaint was deficient in failing to identify the particular defendants in each class and by attributing liability to those who did not attend the meetings merely on the basis of their having received the minutes which gave them knowledge of the prices that had been set. For these reasons, the appellate court concluded, the complaint was ambiguous and indefinite and failed to state a cause of action.

The dichotomy between the defendants which the appellate court perceived and on which it relied is based upon a misreading of the complaint. The complaint alleges but one class of defendants—those who agreed to fix greens fees and charges for golf-cart rentals. The specific prices to be charged pursuant to the agreement were decided upon at the meetings at various locations in Cook County. Those who did not attend the meetings were informed pursuant to the conspiracy and agreement of the specific amounts to be charged by receiving a copy of the minutes of the meetings. But no defendant is charged with becoming a member of the conspiracy or gaining knowledge of its existence merely by receiving a copy of the minutes. All are charged with active price-fixing. In addition, the appellate court appears to have disregarded paragraph 20(B) of the complaint, which refers to all defendants and alleges an agreement relating to the dates on which winter rates would be discontinued and higher summer rates would be placed in effect. This is a separate allegation from the reference in paragraph 20(A) to various meetings held in Cook County and does not allege that the agreement with respect to summer rates was reached at the meetings which were not attended by all of the co-conspirators.

One of the defendants, Sportsman's Country Club, Inc.,

claims that the complaint is deficient because it makes Sportsman's a party to a conspiracy formed before Sportsman's was incorporated. There is no error in charging Sportsman's with having participated in an existing conspiracy. As is the case under Federal antitrust laws, once a conspiracy is established the acts of any co-conspirator become the acts of all co-conspirators, even those who joined the conspiracy after the act in question. (*United States v. United States Gypsum Co.* (1948), 333 U.S. 364, 393, 92 L. Ed. 746, 765, 68 S. Ct. 525, 541.) Thus, if the allegations of the complaint are true (and on a motion to dismiss for failure to state a cause of action it must be assumed that they are), Sportsman's did not join the conspiracy with a clean slate, but immediately became responsible for all the transgressions that had occurred before it joined.

On the substantive issues presented, then, the Attorney General should have prevailed. Some procedural pitfalls remain to be traversed. When the complaint was dismissed the Attorney General, instead of amending within the 60 days permitted by the dismissal order, sought a writ of *mandamus* or a supervisory order from this court reversing the circuit court. This court declined to hear the case and denied the motion for leave to file the Attorney General's petitions on January 10, 1978—7 days after the time set by the circuit court order for filing an amended complaint. The next day the Attorney General attempted to file his amended complaint instanter. Six days later leave was denied because the 60 days which the court had allowed for amendment had expired. When leave was denied, the Attorney General appealed, but the appellate court dismissed because there was no final order. Finally, the Attorney General moved to file the amended complaint instanter or, alternatively, for a final order of dismissal. The circuit court dismissed the cause of action for want of equity, and an appeal to the appellate court followed.

The defendants now argue that the Attorney General

could not appeal for various procedural reasons. First, they suggest that the circuit court did not abuse its discretion in refusing to allow the Attorney General to file his amended complaint instanter. We need not, under the circumstances presented here, determine whether the trial judge abused his discretion in denying the Attorney General leave to file the amended complaint instanter. In view of our conclusion that the trial court erroneously held that the original complaint failed to state a cause of action, an amended complaint was unnecessary. But, upon remand, the Attorney General should be allowed to file an amended complaint if he desires.

The defendants next suggest that the Attorney General may not appeal the final order dismissing the cause of action because it was he who asked the circuit court to enter it. But the Attorney General cannot be faulted for obtaining the dismissal here. After the first complaint was dismissed and leave to amend was denied, the cause was left without an active complaint on file, a headless beast that could not be moved off dead center, clogging the court. Inaction was to the defendants' benefit, and so only the Attorney General could be expected to suggest some action to the circuit court. This is not, after all, a case in which the dismissal was obtained as a ruse or to prejudice the defendant. Obtaining the final order of dismissal could truly be said to be a technicality necessary to move the case to its next stop in what has become a long and tortured path through the courts. We decline to hold the Attorney General's conduct against him, for it was a sensible thing for him to do.

Next, the defendants suggest that the Attorney General's unorthodox tactics stripped him of equity and that the final order of dismissal was proper for that reason alone. The defendants lay the blame for various trial and appellate court proceedings on the Attorney General, the result of which has been that 4½ years after the complaint was filed this case is still not past the pleading stage. It cannot be

denied that this case has been delayed by technicalities. But the only unorthodox action taken by the Attorney General was his attempt to short-circuit the long appellate process through the extraordinary writ of *mandamus*. Though unusual and ultimately unsuccessful, the *ex parte* attempt was within the Attorney General's rights under the rules of this court (73 Ill. 2d R. 381). The courts remain open to all petitions addressed to them that are proper under the rules of procedure, even those that are, as in this case, unwise and improvident. The remaining maneuvers by the Attorney General in the trial court and especially in the appellate court were in response to the erroneous order holding that the original complaint failed to state a cause of action. The Attorney General's action did not deprive him of the equity needed to seek relief on behalf of the People of the State under the Illinois Antitrust Act.

Finally, the defendants claim that the order dismissing the complaint for failure to state a cause of action is not properly before this court because the Attorney General did not stand on his complaint when given leave to file an amended complaint. The appellate court held that the attempt to obtain a writ of *mandamus* reversing the circuit court's order, coupled with a failure to file amendments within the time allotted, constituted an election sufficient to raise the issue of the sufficiency of the complaint on appeal. That reasoning is sound.

The circuit court erred in dismissing the complaint and the appellate court erred in affirming the dismissal, and both judgments are reversed. The cause is remanded for further proceedings.

*Reversed and remanded.*