ROBERT MICHAEL WILLIAMS, Plaintiff-Appellee, v. NORTHWESTERN UNIVERSITY *et al.*, Defendants-Appellants.

First District (4th Division)   No. 86—0995

Opinion filed August 28, 1986.

Robert A. Downing, David F. Graham, and Timothy T. Scott, all of Widley & Austin, of Chicago, and Martha P. Mandel, of Northwestern University, of Evanston, for appellants.

Daniel Karlin and Peter V. Baugher, of Adams, Fox, Adelstein & Rosen, both of Chicago, for appellee.

JUSTICE JOHNSON delivered the opinion of the court:

Plaintiff, Dr. Robert M. Williams, brought an action in the circuit court of Cook County against defendants, Northwestern University, Dr. Roy Patterson (chairman of the University's department of medicine), and Dr. Nathaniel I. Berlin (chief of the school's medical oncology section). Plaintiff alleged that defendants are forcing him to resign from his position of tenured professor at the medical school by interfering with his position.

Plaintiff sought (1) an injunction ordering defendants to cease certain alleged harassment and to return various privileges that they allegedly took from him, and (2) damages for injuries to his professional reputation. Defendants moved to dismiss the complaint, but the trial court, instead, issued a temporary restraining order (TRO) preventing defendants from moving plaintiff out of his present laboratory to another. In a subsequent order, the trial court denied defendants' motion to dismiss the complaint and extended the TRO. Defendants appeal from this order, pursuant to Supreme Court Rule 307(a)(1) (87 Ill. 2d R. 307(a)(1)), contending that the trial court erred in (1) denying their motion to dismiss the complaint, and (2) issuing the TRO.

We reverse and remand, with directions.

The record shows that plaintiff filed a two-count complaint in the law division of the circuit court on September 2, 1982. Count I sought specific performance of an employment contract attached to the complaint. Count II sought damages for breach of the contract. On March 8, 1983, the trial court dismissed count II with leave to amend and transferred count I to the chancery division of the circuit court. The chancery division, on June 30, 1983, struck count I as insufficient to sustain a claim for relief but granted plaintiff leave to amend. On July 26, 1983, plaintiff filed an amended complaint seeking equitable relief.

The record further shows that on September 13, 1985, the court

granted plaintiff leave to file a second amended complaint, which added a second count seeking damages. Plaintiff alleged in the complaint that he is a tenured professor at the University's medical school and that his duties required clinical practice, cancer research, and teaching. Plaintiff also alleged that defendants prevented him from furthering his research and clinical practice and attempted to force him to resign from his tenured position by (1) not assigning him any new patients or research assistants, (2) removing him from the patient rotation hospital calendars, (3) making his salary dependent on patient-generated income, (4) deleting his name from various University publications, and (5) discontinuing some of his fringe benefits pending the renewal of certain grants to the University.

Plaintiff sought in count I of his second amended complaint an injunction requiring defendants to restore to him all of the rights and privileges that defendants allegedly denied him, and to enjoin defendants from interfering with his exercise of those rights and privileges. In count II of the complaint, containing allegations nearly identical to those in count I, plaintiff sought damages, claiming that defendants, in their attempts to force him to resign, injured his professional reputation and caused him monetary loss.

The record shows that defendants moved to dismiss the second amended complaint. On December 9, 1985, the trial court continued the hearing on the motion to dismiss to January 22, 1986. On December 17, 1985, plaintiff moved for a preliminary injunction. He alleged that the University planned to move him from his sterile cancer research laboratory to an unsterile facility. He further alleged that this move would destroy his research and irreparably harm him. He sought to enjoin the University from moving him from his present laboratory.

The record further shows that on December 20, 1985, after notifying the parties and after hearing argument, the trial court issued a TRO preventing defendants from moving plaintiff from his present laboratory. The court directed that the TRO be effective until January 22, 1986, when it would hold a hearing on defendants' motion to dismiss and plaintiff's motion for a preliminary injunction. On January 21, 1986, the trial court continued both motions and extended the TRO to February 7, 1986. On February 7, the trial court again continued the pending motions and extended the TRO to February 19, at which time it continued them to March 20 and extended the TRO to that date.

After hearing argument on March 20, 1986, the trial court entered an order on March 25, *nunc pro tunc* as of March 20, denying

defendants' motion to dismiss plaintiff's second amended complaint. The court, in the same order, continued plaintiff's motion for a preliminary injunction and extended the TRO to June 12, 1986. Defendants appeal from this order.

I

Defendants first claim that the trial court erred in denying their motion to dismiss the second amended complaint. They contend that our review of the TRO must include a review of the sufficiency of the complaint. Plaintiff, however, claims that we cannot review that part of the trial court's order denying defendants' motion to dismiss because it was not final and appealable. Thus, he argues, the only issue before us is whether the trial court erred in issuing the TRO. He asks us to dismiss that portion of this appeal challenging the denial of defendants' motion to dismiss.

Plaintiff is correct that we have jurisdiction over only final orders of the trial court and that the denial of a motion to strike and dismiss is an interlocutory order that does not finally dispose of the proceeding so as to give us jurisdiction on appeal. (*Jursich v. Arlington Heights Federal Savings & Loan Association* (1980), 83 Ill. App. 3d 352, 403 N.E.2d 1260.) Plaintiff is also correct that the order in the instant case does not fall within the two exceptions to this rule contained in Supreme Court Rules 307 and 308 (87 Ill. 2d Rules 307, 308). Thus, under these circumstances alone, we would dismiss the appeal from the trial court's denial of the motion to dismiss the complaint. See *Jursich v. Arlington Heights Federal Savings & Loan Association* (1980), 83 Ill. App. 3d 352, 403 N.E.2d 1260.

■ However, in the absence of an answer, it is appropriate for a reviewing court to consider whether the complaint for injunctive relief was sufficient. (*Whitaker v. Pierce* (1976), 44 Ill. App. 3d 148, 150, 358 N.E.2d 61, 63.) Although a court will take all well-pleaded facts as true, the complaint must clearly show that the relief sought is warranted. Allegations supporting the claim must be positive, certain and precise. Mere opinion, conclusion, or belief will not suffice. (*McErlean v. Harvey Area Community Organization* (1972), 9 Ill. App. 3d 527, 529, 292 N.E.2d 479, 481.) If the face of the complaint does not show sufficient grounds for a court to interfere in the matter, then it is error to grant injunctive relief. *Biehn v. Tess* (1950), 340 Ill. App. 140, 145, 91 N.E.2d 160, 162.

■ In the case at bar, plaintiff states in his motion for a preliminary injunction that the conduct which he seeks enjoined, *i.e.*, the ouster from his laboratory, is only one example of the continuing har-

assment of which he claimed in his complaint. Also, defendants have not answered the complaint. We conclude that we may review the sufficiency of the second amended complaint. We deny plaintiff's motion to dismiss the portion of this appeal challenging the trial court's denial of defendants' motion to dismiss the second amended complaint.

## II

After reviewing the record, we conclude that the trial court should have dismissed the second amended complaint. Plaintiff seeks equitable relief and damages for basically what he claims to be defendants' breach of his tenure agreement with the University. Plaintiff alleged in the complaint essentially that (1) the University granted him the status of tenured professor; (2) the position required clinical practice, cancer research and teaching; and (3) the University stripped him of many entitlements of his position, making it nearly impossible for him to fulfill the requirements of his position.

Tenure is a status that educational institutions have developed to promote (1) freedom of teaching, research, and extra-curricular activities and (2) a sufficient degree of economic security to make teaching and research attractive to qualified persons. Faculty members arrive at this status only after a demonstration of professional competence. With tenure, a faculty member is free of outside pressures and influences that might interfere with that person's conduct of research, interpretations, and investigations; or that which might lead to compromise of that person's search for truth in that person's discipline which could keep that person from transmitting that person's knowledge to students. Although a school may release a tenured faculty member for cause and for other reasons, it denotes clearly defined limitations upon the school's power to discharge the teacher. *American Association of University Professors Bloomfield College Chapter v. Board of Trustees of Bloomfield College* (Ch. Div. 1974), 129 N.J. Super. 249, 262-63, 322 A.2d 846, 853, *aff'd* (App. Div. 1975), 136 N.J. Super. 442, 346 A.2d 615.

Although tenure is a protectable property interest, it does not give any greater rights, either substantive or procedural, than the policy that defines the term. (*Board of Regents of State Colleges v. Roth* (1972), 408 U.S. 564, 577-78, 33 L. Ed. 2d 548, 561, 92 S. Ct. 2701, 2709-10.) Tenure is essentially a contractual interest; therefore, the specific rights and duties associated with it are contained in the understandings of the parties. (*Taliaferro v. Dykstra* (E.D. Va. 1977), 434 F. Supp. 705, 710, *vacated on other grounds* (4th Cir. 1978), 588 F.2d 428 (lack of substantial Federal question).) Thus, a court must

look to the tenure agreement to define the relationship between an educational institution and a tenured faculty member, as we did in *Rymer v. Kendall College* (1978), 64 Ill. App. 3d 355, 380 N.E.2d 1089.

In the instant case, plaintiff's complaint contains no reference to the tenure agreement between him and the University. It contains no allegation that the contract between plaintiff and the University entitled him to the privileges of which the University allegedly deprived him. Plaintiff argues that his "contractual rights as a tenured professor, *whatever their precise parameters*, clearly encompass his ability to conduct his longstanding *** research free from the seemingly deliberate interference of defendants." (Emphasis added.) The "precise parameters" of the tenure agreement, however, are the source of plaintiff's rights and the crux of his action. Plaintiff's complete failure to allege the source of his contractual rights is fatal to his claim.

At oral argument, plaintiff argued that the tenure agreement between him and the University is not contained in a single written contract, but, rather, in a series of oral contracts over a period of time. Plaintiff also invoked the principle that a pleader need not set out his evidence; rather, he should allege only the ultimate facts that he must prove and not the evidentiary facts tending to prove such ultimate facts. *People ex rel. Fahner v. Carriage Way West, Inc.* (1981), 88 Ill. 2d 300, 308, 430 N.E.2d 1005, 1009, quoting *Board of Education v. Kankakee Federation of Teachers Local No. 886* (1970), 46 Ill. 2d 439, 446-47, 264 N.E.2d 18, 23.

These arguments fail. A contract is a contract, written or oral. In his complaint, however, plaintiff did not allege even remotely that the tenure agreement entitled him to the privileges of which defendants allegedly deprived him. Since counts I and II contain the same allegations, this reasoning applies to both. We hold that the trial court erred in denying defendants' motion to dismiss the second amended complaint.

### III

■ We address, lastly, what the trial court should do with this cause on remand. Section 2—616(a) of the Code of Civil Procedure states, in pertinent part, as follows:

> "(a) At any time before final judgment amendments may be allowed on just and reasonable terms, *** and in any matter, either of form or substance, *** which may enable the plaintiff to sustain the claim for which it was intended to be brought ***." (Ill. Rev. Stat. 1985, ch. 110, par. 2—616(a).)

Although the amendment of pleadings is addressed to the sound discretion of the trial court, it should apply the greatest liberality in allowing amendments with the paramount consideration being whether the amendment furthers the interests of justice. *First National Bank & Trust Co. v. Sousanes* (1978), 66 Ill. App. 3d 394, 396, 384 N.E.2d 30, 31.

█ On remand, therefore, the trial court should dismiss the second amended complaint for failure to state a cause of action, but it should grant plaintiff leave to amend.

For the foregoing reasons, the judgment of the circuit court of Cook County is reversed, and the cause is remanded with directions that the trial court dismiss the second amended complaint and that it grant plaintiff leave to amend.

Reversed and remanded, with directions.

LINN, P.J., and McMORROW, J., concur.