ELDRIT NEWSOME, Plaintiff-Appellant, v. SENATOR THOMPSON *et al.*,
Defendants (The City of Chicago, Defendant-Appellee).

First District (3rd Division)   No. 1—88—3126

Opinion filed September 5, 1990.

Melvin Gaines, of Chicago, for appellant.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago (Stephen R. Swofford, Michael B. Kilgallon, and Dolores V. Horan, of counsel), for appellee.

JUSTICE FREEMAN delivered the opinion of the court:

Plaintiff, Eldrit Newsome, filed an action to recover for personal injuries sustained when the automobile of defendant Senator Thompson collided with plaintiff's motorcycle. Defendant City of Chicago (the City) filed a motion to dismiss plaintiff's amended complaint for failure to state a cause of action. The trial court granted the motion. Plaintiff appeals.

Count I of plaintiff's amended complaint alleged that while operating a motorcycle in a northerly direction on Vincennes Avenue in the City on September 12, 1987, he was struck, at approximately 10833 South Vincennes, by the automobile of defendant Thompson, who had

negligently: (1) parked in a "no parking" zone on the east side of Vincennes; (2) attempted to make an illegal turn from a northbound to southbound direction; (3) failed to yield the right of way to northbound traffic on Vincennes; (4) driven from a parked position into plaintiff's path; (5) failed to give any signal or warning of the movement of his automobile; and (6) failed to keep proper lookout for northbound traffic on Vincennes. The complaint further alleged that sometime before September 12, 1987, the City had closed the three northbound lanes of Vincennes Avenue for street reconstruction and converted the three southbound lanes of· Vincennes into one lane each for northbound and southbound traffic between 108th and 109th Streets. Count III of the amended complaint further alleged that the City negligently failed: (1) to erect any barricades between the southbound and northbound traffic lanes of Vincennes; (2) to warn of traffic entering into the northbound lanes from the southbound lanes; (3) to erect any protective devices at the point of the collision; and (4) to take any precautions to protect motorists northbound on Vincennes. It also alleged that as a result of the City's negligence, plaintiff's motorcycle collided with defendant Thompson's automobile. Count II of the complaint alleged willful and wanton misconduct on the part of defendant Thompson. Count IV sounded in negligence against defendant Donald Hammel, d/b/a S.G. Hayes & Co., the contractor allegedly employed by the City to do the reconstruction work on Vincennes Avenue on September 12, 1987.

In moving for dismissal of count III for failure to state a cause of action, the City asserted that contrary to plaintiff's allegation of negligence in failing to erect any barricades on Vincennes, it had no duty to install medians or median barriers thereon, citing *Charpentier v. City of Chicago* (1986), 150 Ill. App. 3d 988, 502 N.E.2d 366. The City further argued that contrary to plaintiff's allegation of negligence in failing to warn of traffic entering the northbound lanes of Vincennes from the southbound lanes, it had no such duty under section 3—104 of the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (Ill. Rev. Stat. 1987, ch. 85, par. 1—101 *et seq.*). Finally, the City argued that, contrary to plaintiff's allegations of negligence in failing to erect any protective devices at the point of the collision and to take any precautions to protect motorists northbound on Vincennes, it had no such duties given that municipalities do not have a duty to undertake public improvements, citing *American State Bank v. Cude* (1975), 30 Ill. App. 3d 206, 331 N.E.2d 825.

OPINION

On appeal, plaintiff contends that count III of his amended com-

plaint stated a cause of action against the City.

Specifically, he first asserts that the City owed him a duty to exercise reasonable care to maintain Vincennes in a reasonably safe condition during its reconstruction. He further argues that, in contrast to the City's reliance upon the lack of any duty of municipalities to undertake public improvements, the foregoing duty encompassed a duty to make public improvements in a reasonably safe manner. These assertions are predicated on section 3—102(a) of the Tort Immunity Act, which provides, generally, that except as otherwise provided in article III thereof, a local public entity has the duty to exercise ordinary care to maintain its property in a reasonably safe condition. (Ill. Rev. Stat. 1987, ch. 85, par. 3—102.)[1] In support of application of that duty here, plaintiff cites, *inter alia, Janssen v. City of Springfield* (1980), 79 Ill. 2d 435, 404 N.E.2d 213, and *Horrell v. City of Chicago* (1986), 145 Ill. App. 3d 428, 495 N.E.2d 1259. Plaintiff further asserts that it is a reasonable inference from the amended complaint that Vincennes was in a dangerous condition on the date of plaintiff's accident. Plaintiff also argues that the City's assertion that it had no duty to warn is contrary to the holding in *Janssen* (see also *Allen v. McCalman* (1923), 229 Ill. App. 221; *City of Elgin v. Thompson* (1901), 98 Ill. App. 358), that the duty to maintain public streets in a safe condition includes the duty to warn of dangerous conditions existing thereon. Plaintiff further urges, also citing *Janssen,* that the Tort Immunity Act does not absolve a municipality of all liability for negligence but merely codifies the common-law liability of municipalities.

Plaintiff is correct that *Janssen* states that a municipality has a duty to exercise ordinary care to maintain its property in a reasonably safe condition and that included in that duty is the duty to warn motorists of dangerous conditions within its public highways. (*Janssen v. City of Springfield* (1980), 79 Ill. 2d 435, 443, 450, 404 N.E.2d 213, citing Ill. Rev. Stat. 1973, ch. 85, pars. 3—102(b), 3—104(b).) Plaintiff is also correct that *Janssen* stands for the proposition that the Tort Immunity Act

---

[1]At oral argument, plaintiff also asserted his reliance upon section 3—103(a) of the Tort Immunity Act. That section provides, *inter alia,* that a local public entity is liable for an injury caused by the adoption of a plan or design of a construction of, or an improvement to, public property, if, after the execution of the plan or design, it appears from its use that it has created a condition that is not reasonably safe. Plaintiff's reliance on this section is misplaced. This section applies only where the construction of or improvement to public property has been completed. (*Anderson v. Sutter* (1983), 119 Ill. App. 3d 1070, 458 N.E.2d 39; *Best v. Richert* (1979), 72 Ill. App. 3d 371, 389 N.E.2d 894.) Here, the construction of or improvement to Vincennes Avenue had not been completed at the time of plaintiff's accident.

does not absolve a municipality of *all* liability for its negligence. However, *Janssen* is of no assistance to plaintiff.

■ That a municipality has a general duty to maintain its property in a reasonably safe condition (Ill. Rev. Stat. 1987, ch. 85, par. 3—102) and that this duty encompasses a duty to make public improvements, once undertaken, in a reasonably safe manner are of no avail to plaintiff. Notwithstanding these duties, the explicit provisions of the Tort Immunity Act absolve municipalities of liability for the specific acts of negligence, *i.e.*, breaches of those duties, alleged in plaintiff's amended complaint. Specifically, section 3—104 thereof provides that neither a local public entity nor public employee is liable under the Act for injury caused by the failure to provide, *inter alia*, any traffic-regulating or warning signs or traffic-separating or restraining devices or barriers. (Ill. Rev. Stat. 1987, ch. 85, par. 3—104; *Ross v. City of Chicago* (1988), 168 Ill. App. 3d 83, 522 N.E.2d 215; *Charpentier v. City of Chicago* (1986), 150 Ill. App. 3d 988, 502 N.E.2d 366.)[2] Thus, under section 3—104, there is no liability for failing to provide traffic-separating devices or barriers or warning signs of any kind, including the type alleged in the amended complaint. In view of the City's immunity from liability, it is immaterial that it is a reasonable inference from the amended complaint that Vincennes was in a dangerous condition on the date of plaintiff's accident.

Parenthetically, we further note that with respect to the duty to post warning signs, section 3—104 is now substantially different than the version thereof upon which *Janssen* relied. *Janssen* was decided under the 1973 version of the Tort Immunity Act, section 3—104 of which contained a subsection (b) providing that a municipality was not liable for the failure to provide traffic warnings unless they were necessary to warn of a condition endangering the safe movement of traffic and not reasonably apparent to or anticipated by a person exercising due care. (Ill. Rev. Stat. 1973, ch. 85, par. 3—104(b).) Subsection (b) has since been eliminated from section 3—104 and it now contains only a broadened version of the former subsection (a) providing as set forth above. As such, Illinois municipalities are now immune from liability for failing to post any traffic warnings whatsoever, including those warning of the ab-

---

[2]*Ross* and *Charpentier* involved "cross-over" accidents on Lake Shore Drive, which, unlike Vincennes Avenue here, was not undergoing repairs or reconstruction at the time thereof. However, that fact does not make the rules of nonliability applied therein for failure to install traffic-separating devices or to warn of their absence inapplicable here. As we note above, plaintiff's attempt to predicate the City's liability on its duties in making a public improvement rather than a duty to make such improvements is ultimately unavailing.

sence of traffic-separating barriers or devices (*Charpentier*, 150 Ill. App. 3d 988, 502 N.E.2d 366) and plaintiff's citation to *Janssen, Allen v. McCalman* (1923), 229 Ill. App. 221, and *City of Elgin v. Thompson* (1901), 98 Ill. App. 358, for a contrary rule is unavailing.

Plaintiff further argues that, in addition to its common-law duty of reasonable care, the City's duty to post barriers is established by its ordinances. In this regard, plaintiff notes that the violation of a statute or ordinance, designed for the protection of human life or property, is *prima facie* evidence of negligence and that an injured party has a cause of action if he was intended to come within the scope of the protection afforded by the statute or ordinance and his injury was proximately connected with the violation. Plaintiff asserts, in accordance with the foregoing rules, that the clear implication of his complaint is that the City violated its duty under its ordinances to place barriers on Vincennes and that he is within the scope of persons intended to be protected by the ordinance.

■ Even assuming that plaintiff is correct that the City's ordinances imposed a duty upon it to post barriers at its street reconstruction sites and even assuming, further, that the City was thus negligent in failing to post such barriers along Vincennes, the fact remains that the Tort Immunity Act immunizes the City from liability for that negligence. To the extent that a claim of liability against the City could be based upon its violation of the subject ordinances, those ordinances are in conflict with the Tort Immunity Act. To that extent, therefore, they are invalid. Municipal authorities cannot adopt ordinances which infringe the spirit of a State law or are repugnant to the general policy of the State. *City of Marengo v. Rowland* (1914), 263 Ill. 531, 534, 105 N.E. 285.

Lastly, plaintiff asserts that, contrary to the trial court's ruling, the actions of defendant Thompson in crossing the single northbound lane of Vincennes Avenue while making an illegal U-turn from the eastern portion of Vincennes, which was under construction, into the single southbound lane of Vincennes were reasonably foreseeable by the City as revealed by its ordinances. Specifically, plaintiff asserts that the fact that the City, by ordinance, requires the placing of a fence or railing at a street construction site "to prevent danger to persons *** traveling such streets" (Chicago Municipal Code §33—52 (1939)) reveals the City's awareness of the potential for injuries to travellers on such streets absent barriers between the construction area and moving traffic lanes. Plaintiff asserts that the fence or railing is obviously intended to prevent objects and vehicles from moving out of the construction zone into the moving traffic lanes.

■ Given our conclusion that the City is immune from liability for any dangerous condition of the reconstruction work on Vincennes, the fact that the injury to plaintiff might have been foreseeable to it is of no consequence. Even if the foreseeability of the plaintiff's injury might, alone, be a sufficient ground upon which to predicate an action for negligence against the City, we find that plaintiff's injury was not reasonably foreseeable to the City, its ordinances notwithstanding.

■ The foreseeability which is a factor in the establishment of a legal duty in traffic accident cases is limited by the extent of deviation of the motor vehicle causing the plaintiff's injury from the ordinary course of travel. That is so because a legal duty arises only where a reasonably prudent person could have foreseen as likely the events which transpired. (See *Ross v. City of Chicago* (1988), 168 Ill. App. 3d 83, 90, 522 N.E.2d 215 (no duty to install barriers to prevent "crossover" accident on Lake Shore Drive).) Given the extent of defendant Thompson's deviation from that course of travel on Vincennes on September 17, 1987, we, like the *Ross* court, cannot say that the accident which caused plaintiff's injuries was a type of reasonably foreseeable occurrence for which the City can be held liable. Therefore, as in *Ross*, plaintiff's amended complaint fails to state a cause of action based on a common-law duty to take steps to prevent the accident which occurred here.

Moreover, we disagree with plaintiff that the City's ordinances reveal its awareness of the dangers posed by vehicles or objects moving out from the construction areas around which the ordinances require fences or railings. The specific ordinance upon which plaintiff relies provides:

> "It shall be the duty of every person engaged in digging in *** or in paving any street, or in building any sewer or drain or trench for water pipes in any *** public streets ***, where such work if left exposed would be dangerous to persons traveling on such streets, to erect a fence or railing at such excavations or work *** to prevent danger to persons who may be traveling such streets, and *** to maintain such railing or fence until the work shall be completed or the obstruction or danger removed.

> It shall be the duty of such person to place upon such railing or fence, at sunset, suitable and sufficient lights and to keep them burning throughout the night during the performance of such work.

> The provisions of this section [chapter 33] shall apply to every person who shall place building materials in any of the public ways; or be engaged in building any vault or constructing any

lateral drain from any cellar to any public sewer; or who shall perform any work causing obstructions in the public streets \*\*\*; and to all city officers and employees performing any work \*\*\* whereby obstructions or excavations shall be made in the public ways." Chicago Municipal Code §33—52 (1939).

■ A reading of the ordinance reveals that rather than intended to protect users of its streets from objects or vehicles moving out from construction zones, it is intended to protect such persons from injuries which might result from falling, whether while on foot or in a vehicle, into excavations made for one purpose or another or from walking or driving into obstructions of one sort or another. (See, *e.g., Enders v. City of Chicago* (1909), 147 Ill. App. 406.) We cannot reasonably construe the ordinance as being intended to prevent the harm which plaintiff asserts it is intended to prevent.

■ Finally, we agree with the City that much of plaintiff's foreseeability argument actually relates more to the issue of proximate cause. While proximate cause is ordinarily a question of fact, it can be decided as a question of law where reasonable men could not differ as to the inferences to be drawn from undisputed facts. (*Novander v. City of Morris* (1989), 181 Ill. App. 3d 1076, 537 N.E.2d 1146.) As the facts in this case are largely undisputed, proximate cause became a question of law which could be decided by the City's motion to dismiss. (See *Novander*.) Moreover, we find the following rule controlling on that issue:

> "If the negligence charged does nothing more than furnish a condition which made the injury possible and that condition causes an injury by the subsequent independent act of a third party, the creation of that condition is not the proximate cause of the injury. (*Merlo v. Public Service Co.* (1942), 381 Ill. 300, 45 N.E.2d 665.) The subsequent independent act becomes the effective intervening cause which breaks the causal connection, and itself becomes the proximate cause." (*Kemp v. Sisters of the Third Order of St. Francis* (1986), 143 Ill. App. 3d 360, 361, 493 N.E.2d 72.)

(See also *Lindenmier v. City of Rockford* (1987), 156 Ill. App. 3d 76, 508 N.E.2d 1201; *Novander v. City of Morris* (1989), 181 Ill. App. 3d 1076, 537 N.E.2d 1146.) At bottom, we agree with the City that, consistently with the foregoing rule, the reconstruction work being done on Vincennes on September 15, 1987, and any lack of barriers, fences, railings, warning signs or other protective devices at the site did no more than furnish a condition which made plaintiff's injury possible through the independent conduct of defendant Thompson. Moreover, similarly to *Novander*, we find that defendant Thompson's act of crossing the northbound lane of Vincennes from the area under construction to the east, in

order to make an illegal U-turn into the southbound lane of Vincennes, was the type of subsequent, independent act which constituted an effective, intervening cause breaking the causal connection between the City's negligence, if any, and plaintiff's injury. *Novander*, 181 Ill. App. 3d at 1079-80.

For all of the foregoing reasons, we affirm the order dismissing count III of plaintiff's amended complaint for failure to state a cause of action against the City of Chicago.

Affirmed.

CERDA, P.J., and RIZZI, J., concur.