DINO SANTELLI, as Ex'r and Personal Representative of the Estates of James P. Murray, Deceased, and Pearl G. Murray, Deceased, Plaintiff-Appellant, v. THE CITY OF CHICAGO *et al.*, Defendants-Appellees.

First District (4th Division) No. 1—89—2951

Opinion filed December 12, 1991.

Michael G. Artery, of Clarendon Hills, for appellant.

Kelly R. Welsh, Corporation Counsel, of Chicago (Ruth M. Moscovitch, and Nina Puglia, Assistant Corporation Counsel, of counsel), for appellees.

JUSTICE LINN delivered the opinion of the court:

Plaintiff, Dino Santelli, as executor of the estates of James and Pearl Murray (decedents), filed a fifth amended complaint in the circuit court of Cook County against defendants, the City of Chicago and the County of Cook. Plaintiff sought damages for the fatal injuries that decedents suffered as a result of an automobile accident.

The trial court struck a portion of the complaint with prejudice and dismissed the city from the action. The court ruled that the complaint failed to state a cause of action against the city. Plaintiff appeals, assigning error to the dismissal.

We reverse the order of the trial court and remand.

BACKGROUND

In determining whether to allow a motion to dismiss, a court must take all well-pled allegations of fact contained in the complaint, and contained in any attached exhibits incorporated into the complaint, as true and construe all reasonable inferences therefrom in the plaintiff's favor. (*Business Development Services, Inc. v. Field Container Corp.* (1981), 96 Ill. App. 3d 834, 836, 422 N.E.2d 86, 89.) Plaintiff's fifth amended complaint, with an attached exhibit, alleged that on March 24, 1987, Avenue O (3435 East) was a public street within the city limits and under the city's jurisdiction. Sometime after September 1977, Avenue O was improved between 114th and 130th Streets by the addition of a raised median strip, which divided the northbound lanes from the southbound lanes. Further, within this section of Avenue O, an "S" curve ran between approximately 122nd Street on the north and Wolf Lake Boulevard on the south.

The complaint further alleged that on the evening of March 24, 1987, decedents were driving their automobile north on Avenue O. As

decedents were travelling on the "S" curve, an automobile travelling in a southbound lane "struck and crossed over" the raised median strip and collided with decedents' vehicle. The decedents suffered fatal injuries.

The complaint named as defendants the city and the county, and contained six counts. Counts I through IV were directed against the city. Count I, a wrongful death claim, and count II, a survival claim, were premised on negligence. Plaintiff alleged essentially as follows. It was the city's duty to remove "hazardous and unreasonably dangerous conditions" that it knew or should have known to exist on its streets, and to exercise reasonable care in the maintenance of its streets. The city knew or should have known that the "raised median strip was inadequate as a physical restraint to prevent collisions and created an unreasonable danger of launching vehicles striking said median strip into the opposite lanes of moving traffic." The city breached these common law duties by negligently: (a) failing to remove the hazardous and unreasonably dangerous condition, *i.e.*, the raised median strip; (b) maintaining an unreasonably high speed limit, or inadequate signs or lighting, on the "S" curve; or (c) maintaining the "S" curve itself "with improper short sight distances," or "in an unreasonably slippery condition by allowing stones and gravel to accumulate on [its] surface." The city's breach of duty proximately caused decedents' fatal injuries.

Count III, a wrongful death claim, and count IV, a survival claim, were premised on violations of Illinois Vehicle Code section 11–304 (Ill. Rev. Stat. 1987, ch. 95½, par. 11–304). Plaintiff alleged essentially as follows. The statute imposed on the city a duty to maintain traffic-control devices, *i.e.*, devices that regulate, warn, or guide traffic, on streets within its jurisdiction. The city breached this statutory duty by: (a) failing to install and maintain along the "S" curve a median barrier, various types of traffic signs, or adequate lighting; (b) failing to establish a proper speed limit for the "S" curve; or (c) deviating from the standards and procedures warranted by the Illinois State manual on traffic control devices for authorizing warning signs and setting speed limits. (See Ill. Rev. Stat. 1987, ch. 95½, par. 11–301.) The city's breach of duty proximately caused decedents' fatal injuries.

Counts V and VI were directed against the county. Both counts were premised on negligence. Count V, a wrongful death claim, essentially repeated the allegations of count I. Count VI, a survival claim, essentially repeated the allegations of count II.

Plaintiff filed his fifth amended complaint on November 30, 1988. On June 23, 1989, the trial court held a hearing on the city's motion to strike counts I through IV and dismiss the city from the action. At the close of the hearing, the trial court granted the city's motion to strike and dismiss. Thus, the county remained as the sole defendant.

Plaintiff timely filed a motion to vacate the trial court's dismissal of the city from the action. At an October 3, 1989, hearing on the motion, plaintiff tendered a sixth amended complaint. At the close of the hearing, the trial court denied the motion in a final and appealable order. (See 134 Ill. 2d R. 304(a).) Plaintiff appeals.

OPINION

I

Plaintiff claims that the trial court erred in finding that his fifth amended complaint failed to state a cause of action against the city. Courts should liberally construe pleadings, and a motion to dismiss admits all well-pled facts. In considering a motion to dismiss, however, courts are to construe pleadings strictly against the pleader. The granting of a motion to strike and dismiss is within the sound discretion of the trial court. *Harvey v. Mackay* (1982), 109 Ill. App. 3d 582, 586, 440 N.E.2d 1022, 1025.

■ Our supreme court has explained what a satisfactory complaint must contain:

"To pass muster a complaint must state a cause of action in two ways. First, it must be legally sufficient; it must set forth a legally recognized claim as its avenue of recovery. When it fails to do this, there is no recourse at law for the injury alleged, and the complaint must be dismissed. [Citations.] Second and unlike Federal practice, the complaint. must be factually sufficient; it must plead facts which bring the claim within the legally recognized cause of action alleged. If it does not, the complaint must be dismissed. [Citation.]" *People ex rel. Fahner v. Carriage Way West, Inc.* (1981), 88 Ill. 2d 300, 308, 430 N.E.2d 1005, 1009.

A

Plaintiff contends that counts I and II set forth a legally recognized claim against the city for negligently failing to remove the hazardous and unreasonably dangerous raised median strip, and for negligently maintaining the "S" curve in an unreasonably dangerous

condition. Both plaintiff and the city agree on the applicable legal principles.

■■ The city is a governmental entity subject to the Local Governmental and Governmental Employees Tort Immunity Act (the Tort Immunity Act or the Act) (Ill. Rev. Stat. 1987, ch. 85, par. 1—101 *et seq.*). Under the Act generally, "a local public entity has the duty to exercise ordinary care to maintain its property in a reasonably safe condition." (Ill. Rev. Stat. 1987, ch. 85, par. 3—102(a).) Under the Act specifically, a local public entity is liable if, after it constructs or improves public property, "it appears from its use that [the local public entity] has created a condition that is not reasonably safe." (Ill. Rev. Stat. 1987, ch. 85, par. 3—103(a).) It is settled that the Act does not impose on a municipality any new duties. Rather, the Act simply articulates common law principles that existed prior to its codification. *Horrell v. City of Chicago* (1986), 145 Ill. App. 3d 428, 435, 495 N.E.2d 1259, 1264; *Warchol v. City of Chicago* (1979), 75 Ill. App. 3d 289, 294, 393 N.E.2d 725, 729.

●■ ■ The applicable common law principles have been set forth in many cases over the years. "It is well settled that a city owes a duty to keep its streets and sidewalks safe for the purpose for which they are intended and for the use of those who are themselves exercising ordinary care." (*Thorsen v. City of Chicago* (1979), 74 Ill. App. 3d 98, 107, 392 N.E.2d 716, 722.) A municipality is not liable for failing or refusing to improve its streets, sidewalks, bridges, sewers and the like. However, once the municipality undertakes such a project, it is liable when the improvement creates an unreasonably dangerous condition. (*American State Bank v. Cude* (1975), 30 Ill. App. 3d 206, 207, 331 N.E.2d 825, 825-26; see 19 E. McQuillen, The Law of Municipal Corporations §54.61a (3d ed. 1985).) A dangerous use of an improved street does not render the improvement dangerous. "Liability arises only when the undertaken improvement, itself, creates an unreasonably dangerous condition." *Ross v. City of Chicago* (1988), 168 Ill. App. 3d 83, 87, 522 N.E.2d 215, 218, citing *Harding v. Chicago Park District* (1975), 34 Ill. App. 3d 425, 339 N.E.2d 779.

■■ Likewise, "while a city is not liable for its failure initially to provide improvements such as lights or traffic control devices [citations], once having adopted and embarked upon a plan of public improvements, a city has a duty to maintain those improvements in a condition conducive to the safety of the traveling public [citations]." *Thorsen*, 74 Ill. App. 3d at 107, 392 N.E.2d at 723; see *Johnston v. City of East Moline* (1950), 405 Ill. 460, 465-68, 91 N.E.2d 401, 404-05.

Our supreme court explained these principles as follows:

"[The court] is simply saying that when a city creates a hazardous condition and someone is injured as a consequence it must respond in damages, just as others are required to do. *** A municipal corporation, like an individual or a private corporation, is required to exercise its rights and powers with such precautions as shall not subject others to injury. The rule which protects it in the exercise of its governmental functions should not be construed to relieve from liability when the plan devised, if put into operation, leaves the city's streets in a dangerous condition for public use." *Baran v. City of Chicago Heights* (1969), 43 Ill. 2d 177, 181, 251 N.E.2d 227, 229, citing *City of Chicago v. Seben* (1897), 165 Ill. 371, 46 N.E. 244.

See Note, *Tort Liability of Municipal Corporations in Illinois*, 1951 U. Ill. L. Forum 637, 644-57.

■ Applying these principles to the case at bar, we conclude that counts I and II are legally sufficient. The city misapprehends the theories of recovery pled in these counts. Plaintiff did not plead that the city was negligent for failing to initially install a median barrier on Avenue O; this distinguishes the instant case from *Charpentier v. City of Chicago* (1986), 150 Ill. App. 3d 988, 502 N.E.2d 366. Plaintiff did not even plead that the city was negligent for failing to replace the raised median strip with a median barrier; this distinguishes the instant case from *Ross v. City of Chicago* (1988), 168 Ill. App. 3d 83, 522 N.E.2d 215. Rather, plaintiff simply alleged that the raised median strip, itself, constituted an unreasonably dangerous condition, and that the city was negligent for failing to remove it; this distinguishes the instant case from *Harding v. Chicago Park District* (1975), 34 Ill. App. 3d 425, 399 N.E.2d 779. Plaintiff also alleged that the city was negligent for failing to maintain the "S" curve in a reasonably safe condition. These theories of recovery are in accord with established Illinois law.

■ Plaintiff also contends that counts III and IV set forth a legally recognized claim against the city for failing to install and maintain various traffic control devices, including a median barrier, traffic signs, or adequate lighting; or for deviating from the standards and procedures contained in the State manual on traffic control devices. Plaintiff based this claim on Illinois Vehicle Code section 11—304, which states in pertinent part:

"§11—304. Local traffic-control devices. Local authorities *** shall place and maintain such traffic-control devices upon highways under their maintenance jurisdiction as are required to in-

dicate and carry out the provisions of this Chapter, and local traffic ordinances or to regulate, warn, or guide traffic. All such traffic control devices shall conform to the State Manual and Specifications and shall be justified by traffic warrants stated in the Manual." (Ill. Rev. Stat. 1987, ch. 95½, par. 11—304.)

This section " 'imposes an obligation on local authorities to warn motorists of those hazards which are incident to that portion of a highway which remains under local maintenance jurisdiction.' " *Fitt v. City of Mattoon* (1991), 215 Ill. App. 3d 472, 480, 574 N.E.2d 1275, 1280, quoting *Janssen v. City of Springfield* (1980), 79 Ill. 2d 435, 448, 404 N.E.2d 213, 219.

The city, however, invokes the Tort Immunity Act. Section 3—104 of the Act states as follows:

"§3—104. Neither a local public entity nor a public employee is liable under this Act for an injury caused by the failure to initially provide regulatory traffic control devices, stop signs, yield right-of-way. signs, speed restriction signs, distinctive roadway markings or any other traffic regulating or warning sign, device or marking, signs, overhead lights, traffic separating or restraining devices or barriers." (Ill. Rev. Stat. 1987, ch. 85, par. 3—104.)

Based on section 3—104, the city argues that it "is now immune from any liability for failure to post a traffic sign. The Illinois Motor Vehicle Code in no way negates the immunity granted to the City by the Tort Immunity Act for failure to post warning signs on Avenue O."

The city's argument accurately reflects recent decisions of this court. In *Newsome v. Thompson* (1990), 202 Ill. App. 3d 1074, 560 N.E.2d 974, this court noted that the General Assembly substantially broadened Tort Immunity Act section 3—104 effective November 24, 1986. (Pub. Act 84—1431, art. I, §2 (1986 Ill. Laws 3740, 3744).) Based on the broadened section 3—104, we concluded that "there is no liability for failing to provide traffic-separating devices or barriers or warning signs of any kind." (*Newsome*, 202 Ill. App. 3d at 1078, 560 N.E.2d at 977.) We further noted that "Illinois municipalities are now immune from liability for failing to post any traffic warnings whatsoever, including those warning of the absence of traffic-separating barriers or devices." (*Newsome*, 202 Ill. App. 3d at 1078-79, 560 N.E.2d at 977.) We note that the Second District Appellate Court reached a contrary conclusion in *Dinges v. Gabardi* (1990), 202 Ill. App. 3d 732, 560 N.E.2d 21.

In *Fitt*, the Fourth District Appellate Court was required to determine the effect of Tort Immunity Act section 3—104, as amended, on Illinois Vehicle Code section 11—304. Based on *Newsome*, the *Fitt* court concluded: "While section 11—304 of the Code imposes an obligation on local authorities to post warning signs, section 3—104 of the Immunity Act immunizes local authorities from any tort liability for failing to fulfil this duty." *Fitt*, 215 Ill. App. 3d at 481, 574 N.E.2d at 887.

■ Applying these principles to the instant case, we conclude that counts III and IV are not legally sufficient. Plaintiff therein alleged that the city breached its statutory duty under Illinois Vehicle Code section 11—304 by failing to install various traffic-control devices. However, Tort Immunity Act section 3—104 absolved the city of any tort liability for breaching this duty. We hold that counts I and II of plaintiff's fifth amended complaint are legally sufficient, but counts III and IV fail to state a cause of action against the city.

### B

Plaintiff next contends that counts I and II contain sufficient facts to state a cause of action in negligence against the city. It is settled that to state a cause of action, a complaint must contain the facts necessary for the plaintiff to recover. Although a plaintiff need not set out his evidence (*Carriage Way West*, 88 Ill. 2d at 308, 430 N.E.2d at 1009), mere allegations of legal conclusions are not sufficient. A court must determine from the context of the pleading whether a particular allegation constitutes a fact or conclusion; the determination is based on whether the language gives sufficient information to the opponent and to the court of the character of evidence to be introduced or of the issues to be tried. *Morse v. Nelson* (1977), 48 Ill. App. 3d 895, 898-99, 363 N.E.2d 167, 169-70.

■ Applying these principles to the case at bar, we conclude that counts I and II do not contain sufficient facts to state a cause of action against the city for negligently failing to remove the unreasonably dangerous raised median strip and for negligently maintaining the "S" curve in an unreasonably dangerous condition. Those counts do not allege *how* the raised median strip itself was unreasonably dangerous. They do not allege *how* the traffic signs, lighting, and other road conditions were inadequate and made the "S" curve unsafe. Although plaintiff need not set out his evidence, counts I and II contain mere legal conclusions, justifying a dismissal. We hold that counts I through IV of plaintiff's fifth amended complaint fail to state a cause of action; counts I and II are not factually sufficient, while counts III

and IV are not legally sufficient. We uphold the trial court's dismissal of counts I through IV of the fifth amended complaint.

## II

●■ Plaintiff also assigns error to the trial court's denial of leave to file a sixth amended complaint. Section 2—616(a) of the Code of Civil Procedure provides that a trial court may allow amendments to the pleadings at any time prior to final judgment on just and reasonable terms as may appear proper to the court. (Ill. Rev. Stat. 1987, ch. 110, par. 2—616(a).) "A trial court's power to allow amendment should be fully exercised in order that litigants may completely present their causes of action [citation], and doubts should be decided in favor of allowance of the amendment." (*Giannini v. First National Bank* (1985), 136 Ill. App. 3d 971, 988, 483 N.E.2d 924, 938.) In other words, a trial court should grant leave to amend a complaint unless it is apparent that, even following amendment, no cause of action can be stated. (*Juhasz v. Hejna* (1985), 139 Ill. App. 3d 35, 38, 487 N.E.2d 113, 115.) "Although the amendment of pleadings is addressed to the sound discretion of the trial court, it should apply the greatest liberality in allowing amendments with the paramount consideration being whether the amendment furthers the interests of justice." *Williams v. Northwestern University* (1986), 147 Ill. App. 3d 374, 380, 497 N.E.2d 1226, 1230.

Based on the record before us, we conclude that the trial court should have granted plaintiff leave to amend. We cannot say that, even following amendment, no cause of action can be stated.

For the foregoing reasons, the judgment of the circuit court of Cook County is reversed, and the cause is remanded with directions that the trial court grant plaintiff leave to amend.

Reversed and remanded, with directions.

JIGANTI, P.J., and McMORROW, J., concur.