Richard D. Austin, Plaintiff-Appellant, v. The House of Vision, Inc., a Corporation, et al., Defendants-Appellees.

Gen. No. 52,164.

First District.

June 13, 1968.

Rehearing denied December 2, 1968.

Mason, Albright, Stansbury & Rose, of Chicago, for appellant.

Lawrence J. West and Leo Spira, of Chicago, for appellees.

CULBERTSON, J.

Appeal has been prosecuted in this case by plaintiff, Richard D. Austin, from a judgment order of the circuit court of Cook County which dismissed an amended complaint against defendants, The House of Vision, Inc., and the trustees of its Employees' Benefit Trust, wherein plaintiff sought to recover treble damages under the provisions of the Illinois Antitrust Act (Ill Rev Stats 1965, c 38, pars 60–1 thru 60–11), for injuries allegedly suffered as the result of a conspiracy to restrain competition in interstate commerce.

Facts gathered from the pleadings reveal that The House of Vision, Inc., hereinafter referred to as defendant, engages in the optical business directly with the public from offices located in eight different States. Eighteen separate offices are situated in the Chicago metropolitan area. In March, 1956, plaintiff, then an optical technician with fifteen years' experience, was employed by defendant and thereafter worked in offices in and around Chicago. At no time was there a written contract of employment. On the date plaintiff's employment began there was in existence The House of Vision Employees' Benefit Trust, a benefit program for employees funded by their contributions and those of the employer. Whether participation was compulsory or voluntary does not appear, but plaintiff did become a participant. On July 9, 1958, with the express written consent of the participating employees, including plaintiff, the trust instrument was amended retroactively to provide as follows:

"Upon the written concurrence of a majority of the TRUSTEES, any employee whose compensation is $6,500.00 per annum or more, and any former employee whose compensation immediately before termination of his employment was $6,500.00 per annum

or more, who divulges any of the EMPLOYER'S trade secrets to any competitor of the EMPLOYER, or who as owner, co-partner, director, officer, servant, shareholder or otherwise becomes interested in or connected with any person, firm or corporation in direct competition with the EMPLOYER shall, regardless of the number of years he was a participant, be paid by the TRUSTEES only the aggregate of his own contributions to the Trust, plus interest thereon at the rate of 3% per annum less the amount of any charges against his account for hospitalization benefits or term life insurance, and less distributions previously made to such employee, if any."

Plaintiff voluntarily terminated his employment with defendant on June 15, 1966, and five days later started to work as an optical technician for a competitor of defendant. As of the termination date, plaintiff's trust account in the benefit program came to $16,288.27, such sum being the aggregate of plaintiff's contributions of $1,189.43, employer contributions of $6,854.73, and trust income of $8,244.11; however, under a formula evidently contained in the trust instrument, defendant calculated plaintiff's vested interest as being $6,794.48. It further appears that plaintiff was, at the time his employment ended, indebted to the trust fund for a loan which, with interest to August 31, 1966, amounted to $4,281.53. On August 17, 1966, the trustees passed a resolution that plaintiff should be paid only the aggregate of his own contributions plus 3% interest ($1,348.03); that such amount should be applied to his loan indebtedness to the trust; and that a demand should be made for the immediate payment of the balance ($2,933.50) due on such loan. Plaintiff was duly advised of the trustees' action and his amended complaint, praying for treble damages in the amount of $48,642.12 (less the amount due on his loan), was filed the following day.

We see no beneficial purpose to be served by a detailed recital of the amended complaint. Suffice it to say it purports to be based on section 60-3(c)(2) of the Illinois Antitrust Act which makes it a violation of the law for any person to unreasonably restrain trade or commerce by contract, combination or conspiracy with one or more other persons. (Ill Rev Stats 1965, c 38, par 60-3(c)(2).) Generally speaking, its theory is that the defendant company and the trustees of the benefit fund have conspired "to restrain competition in Illinois commerce by preventing former employees of the defendant corporation from competing with the corporation"; that the conspiracy has been carried out by the use of restrictive employment contracts, the trust provisions and "various forms of coercive activity"; and that such conspiracy "has resulted in an actual restraint of competition in Illinois commerce by reason of defendant's monopolization and control of the availability of optical industry employees in Illinois commerce." To obviate the circumstance that the trust instrument had been amended with plaintiff's consent, the complaint alleged there had been an implied threat to discharge employees who did not consent. Section 60-7(2) of our act provides that a person must "have been injured in his person or property" by a violation in order to maintain a private antitrust action, (Ill Rev Stats 1965, c 38, par 60-7(2)) and, while inartfully pleaded, it is apparently plaintiff's theory that the loss of the full amount which had been credited to him in the benefit trust fund is the injury which gives him standing to sue, and which proximately resulted from the alleged conspiracy. Indeed, plaintiff has suffered no other injury since the alleged "conspiracy" and "monopoly" have not prevented him from working for a competitor. The amended complaint was stricken and the cause dismissed on motion of defendants, and this appeal has followed.

Among other things, defendants' motion pleaded the four-year statute of limitations provided in section 60-7

(2) as follows: "Any action for damages under this subsection shall be forever barred unless commenced within four years after the cause of action accrued." (Ill Rev Stats 1965, c 38, par 60–7(2).) That contention is renewed by defendants here. And while we believe the amended complaint may be deficient in several respects, we deem it sufficient and expedient to consider only the issue of whether plaintiff's claim is barred by the statute of limitations.

██ Although the Illinois Antitrust Act and its limitation provision are comparatively new, judicial guidelines are provided by many courts which have considered the question of when the statute of limitations begins to run in a civil suit for damages for violation of antitrust acts. It has been said that "private civil antitrust actions are founded, not upon the mere existence of a conspiracy, but upon injuries which result from the commission of forbidden 'overt acts' by the conspirators." (Suckow Borax Mines Consolidated v. Borax Consolidated, 9th Cir, 185 F2d 196, 208.) For this reason, the act which produced the injury is the focal point in determining when the period of limitation starts to run. Where there are a series of illegal acts, each successively causing new damage, it is held that "(T)he statute of limitations in a civil conspiracy runs from the commission of the last overt act alleged to have caused damage." (Steiner v. 20th Century-Fox Film Corp., 9th Cir, 232 F2d 190, 198; Daly v. Columbia Broadcasting System, 7th Cir, 309 F2d 83; see also: Toulmin's Anti-Trust Laws, Vol 6, § 16.31, pp 427–428.) But where there is but one overt act from which subsequent damages may flow, it is held that the statute begins to run on the date the defendant invaded the plaintiff's interest and inflicted injury, and this is so despite the continuing nature of the conspiracy. (Baldwin v. Loew's, Inc., 7th Cir, 312 F2d 387, 390; Skouras Theatres Corp. v. Radio-Keith-Orpheum Corp., DCNY 193 F Supp 401, 405; Fleischer v. A.A.P., Inc., DCNY, 180 F Supp 717, 723;

Toulmin's Anti-Trust Laws, Vol 6, § 16.29, p 425.) Or, as the proposition was stated in Steiner v. 20th Century-Fox Film Corporation, 9th Cir, 232 F2d 190, 195: "In a continuing conspiracy causing continuing damage without further overt acts, the statute of limitations runs, as we have noted, from the time the blow which caused the damage was struck. Any further internal injury affects the problem of how much should be claimed in damages, not the problem of when the statute of limitations commences to run." Consistent with the latter view, Illinois courts have held that an action sounding in tort accrues at, and limitations begin to run from, the date on which there is a wrongful invasion of personal or property rights, regardless of the time when the full extent of the injury or damages sustained is ascertained. Reat v. Illinois Cent. R. Co., 47 Ill App2d 267, 197 NE2d 860; 25 ILP, Limitations, § 54, p 223.

■ In light of these established principles it is our opinion that plaintiff's cause of action accrued, and the four-year limitation started to run, on July 9, 1958, when the benefit trust was retroactively amended to provide that employees who entered into competition against defendant would not receive full benefits from the trust. It was on this date that plaintiff was injured and his interest invaded by the defendants, and it is only from this alleged conspiratorial act, or "blow" as the court in Steiner characterizes it, that plaintiff can claim proximate injury. At the time he had been employed by defendant, and had been a beneficiary of the trust, for a period of slightly over three years. Thus, he had a greater interest in the trust than his own contributions, and an immediate cause of action as a result of the alleged act of conspiracy which invaded his interest. The circumstance that the alleged conspiracy continued and that the full extent of his damages could not be determined until he became a competitor of defendant has no bearing on the problem of when the statute started to run.

Support for the conclusion we have reached is found in the Baldwin (312 F2d 387), Skouras (193 F Supp 401), and Fleischer (180 F Supp 717,) decisions heretofore cited. In Baldwin, where it was alleged that defendants had conspired to force the plaintiff to lease a theater to a large circuit owner on terms inferior to those that would have been obtained but for the alleged conspiracy, it was held that the period of limitations was to be measured from the date the lease was executed and the conspiracy commenced, notwithstanding the fact that options to extend the lease were subsequently executed from time to time. Comparably, in Skouras, where the alleged conspiracy involved a pooling agreement between certain theater operators, it was held that statute of limitations started to run when the agreement was made, and that "the consequent overt acts resulting from the agreement were merely damages which flowed from the orginal agreement." (193 F Supp at 406.) Fleischer likewise involved a contract and in holding plaintiff's action was barred, the court said (180 F Supp at 723): "The injury under the antitrust laws, if any, was inflicted when the contract was made. The period of limitations is not extended by the fact that damages from that injury may have continued to accrue." And so it was in the present case. The injury and the alleged conspiracy, if any, commenced on July 9, 1958, when the trust amendment purported to be aimed at a restraint of commerce was adopted, and it is from this date that the four-year period of limitation is to be measured. Accordingly, the plaintiff's complaint was not timely filed and the cause of action was properly dismissed.

For the reason stated, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

ALLOY, P. J. and STOUDER, J., concur.