MBL (USA) CORPORATION, Plaintiff and Counterdefendant-Appellee, v. FREDERICK J. DIEKMAN *et al.*, Defendants and Counterplaintiffs-Appellants, (Chemi-Flex, Inc., *et al.*, Third-Party Defendants-Appellees).

First District (2nd Division)   No. 84—2826

Opinion filed September 17, 1985.—Rehearing denied October 29, 1985.

Irwin I. Zatz, Roger G. Fein, Rosemarie J. Guadnolo, and Leonard Saphire-Bernstein, all of Arvey, Hodes, Costello & Burman, of Chicago, for appellants.

Jerrold E. Fink and Nancy E. Sasamoto, both of Masuda, Funai, Eifert & Mitchell, Ltd., of Chicago, for appellee MBL (USA) Corporation.

Arnold M. Flank, Ltd., of Chicago, for other appellees.

JUSTICE BILANDIC delivered the opinion of the court:

Appellants Frederick J. Diekman, FBN Industries, and Surface Additions, Inc. (hereinafter referred to collectively as Diekman), appeal from an order of the circuit court that dismissed their amended counterclaim with prejudice. The amended counterclaim alleged that appellees MBL (USA) Corp. (hereinafter MBL), Chemi-Flex, Inc., and Ernest Meeder conspired to monopolize the urethane timing belt market in Illinois in violation of the Illinois Antitrust Act (Ill. Rev. Stat. 1983, ch. 38, par. 60—1 *et seq.*). After appellees moved to dismiss the amended counterclaim under sections 2—615 and 2—619 of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, pars. 2—615, 2—619), the circuit court dismissed the counterclaim by ruling that the counterclaim was barred by the statute of limitations and that it failed to state a cause of action for monopolization and conspiracy.

Appellant Diekman appealed and argues three points: (1) that the motions to dismiss were improper; (2) that the amended counterclaim did state a cause of action; and (3) that the cause of action was not barred by the statute of limitations.

This is the second time that these parties have appeared before this court. In our first opinion, *MBL (USA) Corp. v. Diekman* (1983), 112 Ill. App. 3d 229, 445 N.E.2d 418, *appeal denied* (1983), 94 Ill. 2d 553, we found the following facts. Appellee MBL is owned by two Japanese companies. In 1979, MBL acquired appellee Chemi-Flex, Inc., an Illinois corporation engaged in the business of manufacturing urethane timing belts, flat belts, and related products. Chemi-Flex, Inc., was formed by appellee Ernest Meeder in 1971.

Appellant Diekman is a former employee of Chemi-Flex, who began working for it part-time while he was a student. After Diekman graduated from college, he began working for Chemi-Flex full-time in 1972. In December 1972, Diekman signed a restrictive covenant, which is the basis of MBL's suit against Diekman.

Diekman worked for Chemi-Flex until he was fired in 1978. He was rehired in 1979 after Chemi-Flex had been acquired by MBL. At that time, the president of MBL asked Diekman to sign a restrictive covenant agreement. He refused to do so because it was too restrictive and unfair. No further discussions took place, and Diekman never signed the agreement. According to Diekman, he was fired in Septem-

ber 1979 over continuing disputes about hiring practices and the manner in which the company was being run. MBL's officers claimed that Diekman left voluntarily.

Later that year, Diekman formed two corporations, appellants FBN Industries and Surface Additions, Inc. Diekman began to design machines for belt-producing equipment. When MBL learned that Diekman was planning on competing with it, it sent Diekman a letter and asked that he comply with the restrictive covenant that he signed in 1972. MBL also requested Diekman to disclose his designs and other business activities. Diekman refused, and MBL filed a verified complaint and moved for injunctive relief. A temporary restraining order was entered on December 30, 1980. After a hearing, the court dissolved the TRO and refused to issue a preliminary injunction. MBL appealed, and we affirmed. *MBL (USA) Corp. v. Diekman* (1983), 112 Ill. App. 3d 229, 445 N.E.2d 418, *appeal denied* (1983), 94 Ill. 2d 553.

Diekman filed his original answer and counterclaim on April 24, 1981. In it, he alleged that:

> "1. Chemi-Flex, Inc. and Ernest Meeder have been and are engaged in the business of producing and distributing urethane timing belts and related products.
>
> 2. Chemi-Flex, Inc. and Ernest Meeder sold and distributed a substantial part of the urethane timings in the Midwest area.
>
> 3. *Since at least December 18, 1972, Chemi-Flex, Inc. and Ernest Meeder have attempted to contract in restraint of trade,* to maintain and use a monopoly power and to unreasonably restrain trade and eliminate competition in the manufacture and sale of urethane timing belts \*\*\*." (Emphasis added.)

It was the last statement, that alleged a 1972 date, on which the trial court based its ruling that the cause of action, filed in 1981, was barred by the applicable four-year statute of limitations. Ill. Rev. Stat. 1983, ch. 38, par. 60—7(2).

After MBL moved to strike and dismiss the counterclaim, Diekman filed his amended counterclaim. He alleged, in part, that:

> "5. On or about December 17, 1980 and since that date until the date of filing of this counterclaim, the defendants and each of them have conspired and combined to establish, maintain, use and attempt to acquire monopoly power over a substantial part of trade or commerce in the State of Illinois \*\*\*."

Diekman also claimed that MBL and Chemi-Flex had furthered this conspiracy by MBL's acquisition of Chemi-Flex and threats of baseless litigation, and carrying out those threats by litigation without basis to enforce the alleged restrictive covenant agreements.

Both MBL and Meeder moved to strike and dismiss the amended counterclaim, and attached affidavits and other factual material along with his motion. Both motions were based on sections 2—615 and 2—619 of the Code of Civil Procedure. (Ill. Rev. Stat. 1983, ch. 110, pars. 2—615, 2—619.) About a month later, on June 22, 1984, Meeder also filed a motion for summary judgment. On October 24, 1984, the circuit court dismissed the counterclaim with prejudice, ruling that it failed to state a cause of action and that the statute of limitations barred the action. It is from this order that Diekman appealed.

## I

Counterdefendant MBL filed a combined motion under sections 2—615 and 2—619 to strike and dismiss the amended counterclaim of Diekman. It was supported by the affidavit of Keiji Morata, an executive vice-president and director of MBL. Likewise, third-party defendant Ernest Meeder filed an almost identical combined motion under sections 2—615 and 2—619. It was supported by his personal affidavit.

The combined motions of each sought dismissal on the grounds that: (1) the cause of action was barred by the four-year statute of limitations of the Illinois Antitrust Act; (2) that the amended counterclaim was insufficient as a matter of law because it did not state a cause of action; and (3) that the allegations of conspiracy were false and without basis in fact. The motions did not segregate the points raised under section 2—615 from the points raised under section 2—619. The affidavits did not state that they were attached in support of any particular point or points. In addition, the affidavits also attempted to controvert specific allegations of the amended counterclaim.

A motion under section 2—615 proceeds under a different legal theory than a motion under section 2—619. Under section 2—615, one may seek dismissal of a complaint for failure to state a cause of action and must therein specify why the pleading is legally insufficient. This motion admits all well-pleaded facts in the complaint, and they must be taken as true. Factual defenses are not available under this section; the court may consider only the allegations in the complaint and may not consider supporting affidavits offered by the movant. *Davis v. Weiskopf* (1982), 108 Ill. App. 3d 505, 509, 439 N.E.2d 60.

On the other hand, while a motion under section 2—619 also admits facts well-pleaded, it also admits the legal sufficiency of the attacked pleadings. Under section 2—619, one may seek dismissal of an action because it is barred by affirmative matter that defeats the

claim, and one may support the motion by facts stated in an affidavit if the grounds do not appear on the face of the complaint. 108 Ill. App. 3d 505, 509.

The issue that confronts us is one "which all too frequently arises on appeal." (*Eddings v. Dundee Township Highway Commissioner* (1985), 135 Ill. App. 3d 190, 199, 478 N.E.2d 888, 894.) The appellees did not designate under what section the motion to dismiss was brought, even though "[m]eticulous practice dictates that a lawyer specifically designate whether his motion to dismiss is pursuant to section 2—615 or 2—619." 135 Ill. App. 3d 190, 199, 478 N.E.2d 888, 894.

The leading case regarding motion practice is *Janes v. First Federal Savings & Loan Association* (1974), 57 Ill. 2d 398, 312 N.E.2d 605. There, defendants filed motions that were a hybrid between a motion to dismiss and summary judgment. The supreme court expressly disapproved of the practice, but it ruled on the merits to save judicial resources. (57 Ill. 2d 398, 406-07, 312 N.E.2d 605.) Since *Janes*, appellate courts have generally reviewed the merits of improperly made motions to dismiss, and we have held that joining the two motions is error, although not *per se* reversible error absent a showing of prejudice. (*Herman v. Hamblet* (1980), 81 Ill. App. 3d 1050, 1055, 401 N.E.2d 973.) More recently, in *Eddings v. Dundee Township Highway Commissioner* (1985), 135 Ill. App. 3d 190, 478 N.E.2d 888, we held that "where prejudice results from such an improper motion practice, we will reverse without addressing the merits of the motion as argued on appeal." 135 Ill. App. 3d 190, 200, 478 N.E.2d 888, 895.

Although we agree with the *Eddings* court that improper motion practice is to be discouraged, we will review the merits in the interest of judicial economy.

■■ The motions filed by the appellees did not distinguish between the two sections in any way. Moreover, the motions are accompanied by affidavits. An affidavit is not to be used in ruling on a section 2—615 motion (*O.K. Electric Co. v. Fernandes* (1982), 111 Ill. App. 3d 466, 470, 444 N.E.2d 264), so the appellant was clearly prejudiced by their use. Affidavits are proper under section 2—619 if the defect does not appear on the face of the complaint. If a section 2—619 defect does not appear on the face of the pleading, the motion must be supported with an affidavit. Considering the affidavits filed in this case as section 2—619 affidavits, we must conclude that they are insufficient. Rather than present facts which would support dismissal under one or more of the nine subsections of section 2—619, the affidavits improperly challenge the allegations of the amended counter-

claim. That is not the type of affidavit that will support dismissal under section 2—619. *Davis v. Weiskopf* (1982), 108 Ill. App. 3d 505, 509-10, 439 N.E.2d 60.

## II

Diekman also argues that the trial court erred in ruling that his amended counterclaim did not state a cause of action for monopolization and conspiracy, in violation of the Illinois Antitrust Act (Ill. Rev. Stat. 1983, ch. 38, par. 60—1 *et seq.*). Section 60—3 of the Act reads in part:

"Sec. 3. Every person shall be deemed to have committed a violation of this Act who shall:

\* \* \*

(3) Establish, maintain, use, or attempt to acquire monopoly power over any substantial part of trade or commerce of this State for the purpose of excluding competition or of controlling, fixing, or maintaining prices in such trade or commerce; \*\*\*." Ill. Rev. Stat. 1983, ch. 38, par. 60—3(3).

Diekman's amended counterclaim substantially tracked the language of the statute and alleged in part the following:

"5. On or about December 17, 1980 and since that date until the date of this counterclaim, the defendants and each of them have conspired and combined to establish, maintain, use, and attempt to acquire monopoly power over a substantial part of trade or commerce in the State of Illinois in the sale and distribution of urethane timing belts.

6. For the purpose of forming and effectuating the aforesaid combination and conspiracy, the counterdefendant and third party defendant, by concert of action, have done \*\*\* the following:

(a) MBL (USA) agreed to purchase from MEEDER [Chemi-Flex, Inc.] \*\*\*; and by doing so, and by other means, attempted to acquire all rights under certain purported covenants not to compete \*\*\*.

(b) [Defendants] did injure competition by threats and baseless litigation \*\*\*.

(c) [Defendants] did injure competition by means of litigation brought without basis under certain purported covenants not to disclose."

Illinois is a fact-pleading State, which means that although pleadings are to be liberally construed and formal allegations are not necessary, a complaint must contain facts to state a cause of action. (*Peo-*

*ple ex rel. Fahner v. Carriage Way West, Inc.* (1981), 88 Ill. 2d 300, 307-08, 430 N.E.2d 1005.) A complaint "is deficient when it fails to allege the facts necessary for the plaintiff to recover. [Citation.] 'But it is a rule of pleading long established, that a pleader is not required to set out his evidence. To the contrary, only the ultimate facts to be proved should be alleged and not the evidentiary facts tending to prove such ultimate facts.' " 88 Ill. 2d 300, 308, 430 N.E.2d 1005.

■■ In *People ex rel. Scott v. College Hills Corp.* (1982), 91 Ill. 2d 138, 435 N.E.2d 463, our supreme court addressed the issue of whether an amended complaint had been dismissed properly. The court said:

> "Conspiracies by their very nature do not permit plaintiff to allege all the details of the defendants' conduct. Such actions are often purposefully shrouded in mystery. This is particularly true in reviewing antitrust conspiracies. The litigation is complex, the issues are often subtle, and the alleged actions carefully camouflaged." (91 Ill. 2d 138, 145-46, 435 N.E.2d 463.)

That same reasoning applies to this case. As our supreme court has also said, "Perhaps the best measure of a complaint's sufficiency, then, is whether the defendant is able to answer the essential allegations." (*People ex rel. Fahner v. Carriage Way West, Inc.* (1981), 88 Ill. 2d 300, 308, 430 N.E.2d 1005.) Here, the allegations are sufficient to apprise the appellees of the charge, which they sought to answer in their affidavits. Moreover, the allegations here are *per se* violations of the Illinois Antitrust Act, and a *per se* allegation is legally sufficient as a matter of law. (88 Ill. 2d 300, 308-09, 430 N.E.2d 1005.) The amended counterclaim, then, was sufficient to state a cause of action, and the trial court erred in dismissing it.

### III

Diekman's last point is that the trial court erred in ruling that the applicable statute of limitations (Ill. Rev. Stat. 1983, ch. 38, par. 60—7(2)) barred the cause of action. Appellees argue that the court considered properly the original counterclaim, which stated that, "Since at least December 18, 1972, Chemi-Flex, Inc. and Ernest Meeder have attempted to contract in restraint of trade ***." Because the counterclaim was filed originally in 1981, the court ruled that it was barred by the four-year statute of limitations.

■■ The trial court, however, erred in considering the original counterclaim because section 2—615 of the Code of Civil Procedure "does not authorize consideration of defects in pleadings which have

been superseded by amendment, since the purpose of amendments is to correct such defects." (Ill. Ann. Stat., ch. 110, par. 2—615, Historical & Practice Notes, at 409 (Smith-Hurd 1983).) Where an amended pleading does not refer to or adopt the original pleading, it completely supersedes the original pleading (*Bowman v. County of Lake* (1963), 29 Ill. 2d 268, 272, 193 N.E.2d 833), so that the original pleading cannot be relied on by either side on a motion to strike the amended pleading (*W.P. Iverson & Co. v. Dunham Manufacturing Co.* (1958), 18 Ill. App. 2d 404, 425-26, 152 N.E.2d 615). Moreover, the cause of action here occurred when the appellees allegedly conspired to monopolize the market, which was manifested by MBL's acquisition of Chemi-Flex in 1979. As we have noted " '[T]he statute of limitations in a civil conspiracy runs from the commission of the last overt act alleged to have caused damage.' [Citations.] But where there is but one overt act from which subsequent damages may flow, it is held that the statute begins to run on the date the defendant invaded the plaintiff's interest and inflicted injury, and this is so despite the continuing nature of the conspiracy." *Austin v. House of Vision, Inc.* (1968), 101 Ill. App. 2d 251, 255, 243 N.E.2d 297, *appeal denied* (1969), 40 Ill. 2d 578.

■ Here, the overt act alleged to violate the antitrust laws was the acquisition by MBL of Chemi-Flex, and their alleged conspiracy to monopolize the market in 1979. Since the counterclaim was filed in 1981, it was within the four-year statute of limitations.

For the foregoing reasons, the judgment of the circuit court of Cook County is reversed and the cause is remanded for further proceedings consistent with the views expressed herein.

Reversed and remanded.

STAMOS, P.J., and HARTMAN, J., concur.