GILBERT'S ETHAN ALLEN GALLERY, Plaintiff-Appellee and Cross-Appellant, v. ETHAN ALLEN, INC., Defendant-Appellant and Cross-Appellee (Bly and Sons, Inc., Defendant and Cross-Appellee).

Fifth District   No. 5—91—0746

Opinion filed September 3, 1993.—Rehearing denied October 20, 1993.

GOLDENHERSH, J., dissenting.

Dennis E. Rose, of Donovan, Rose, Nester & Szewczyk, P.C., of Belleville, for appellant.

Roy C. Dripps, of Lakin Law Firm, of Wood River, for appellee Gilbert's Ethan Allen Gallery.

Jerome S. Kraus and Lori R. Koch, both of Goffstein, Kraus, Sherman, Morganstern & Seigel, of St. Louis, Missouri, for appellee Bly & Sons, Inc.

JUSTICE LEWIS delivered the opinion of the court:

Defendant Ethan Allen, Inc. (Ethan Allen), appeals from a judgment of the circuit court of Madison County in favor of plaintiff, Gilbert's Ethan Allen Gallery, on plaintiff's claim that Ethan Allen violated the Illinois Antitrust Act (the Illinois Act) (Ill. Rev. Stat. 1985, ch. 38, par. 60—1 *et seq.*). Plaintiff cross-appeals a judgment in favor of defendant Bly & Sons, Inc. (Bly), on plaintiff's claim that Bly violated the Illinois Act. The issues on appeal are: (1) whether the trial court applied the correct legal test in finding that Ethan Allen violated section 3(3) of the Illinois Act (Ill. Rev. Stat. 1985, ch. 38, par. 60—3(3)); (2) whether the trial court erred in computing damages for plaintiff; (3) whether the trial court erred in finding that Bly did not violate the Illinois Act; and (4) whether the trial court erred in refusing to order attorney fees to plaintiff. We reverse on issue (1) and affirm on issue (3). Issues (2) and (4) need not be discussed.

## I

Ethan Allen is a manufacturer and distributor of furniture whose products are distributed to the consumer through a network of authorized dealers. Plaintiff was an Ethan Allen dealer from 1956 to 1972 and an exclusive Ethan Allen dealer from 1972 to 1985. Plaintiff's store was located in Alton, but plaintiff advertised throughout the metropolitan St. Louis area and made most of its sales to residents from Missouri. Ethan Allen's share of the metropolitan St. Louis furniture market was more than 1% but less than 2%. In 1985, Ethan Allen terminated its relationship with plaintiff and informed plaintiff that it would no longer recognize plaintiff as an authorized dealer. As a result of that termination, Bly became the sole authorized dealer of Ethan Allen furniture in the St. Louis metropolitan area. Bly has one store located in Fairview Heights, Illinois, and one in Chesterfield, Missouri. Plaintiff, meanwhile, became a competitor of Bly and Ethan Allen by becoming a Drexel furniture dealer.

Plaintiff brought this action alleging its termination was a result of a conspiracy between Ethan Allen and Bly to fix prices in violation of the Illinois Act. (Ill. Rev. Stat. 1985, ch. 38, pars. 60—3(2), (3).) At a bench trial, the court heard evidence that it is Ethan Allen's practice to publish suggested retail prices, and it prefers its dealers to set their resale prices accordingly. Former Ethan Allen sales representative Jack Tripp testified that he serviced plaintiff's account with Ethan Allen. Tripp further stated that an Ethan Allen executive told him in 1984 that plaintiff would not be an Ethan Allen dealer much

longer because it was a discounter and sold furniture for less than the suggested price.

Lewis Gilbert testified that Nathan Ancell, chairman of the board of Ethan Allen, informed him that Ethan Allen strongly disapproved of plaintiff's discounting policy. Gilbert further testified that he lost $126,000 as a result of the termination by Ethan Allen. After Ethan Allen's termination, plaintiff became a Drexel furniture dealer. The $126,000 sum represented the cost to change the furniture displays Ethan Allen required him to maintain. He stated that the changeover required him to close down the store for a period of time and operate at a reduced level for an additional period of time, resulting in additional losses of $226,000 in 1987 and $140,000 in 1988.

At the close of evidence, the court entered judgment in favor of plaintiff on its claim against Ethan Allen and against plaintiff on its claim against Bly. The court concluded that Ethan Allen's actions forcing plaintiff from the marketplace constituted a violation of section 3(3) of the Illinois Act (Ill. Rev. Stat. 1985, ch. 38, par. 60—3(3)). The court awarded plaintiff $492,000 in damages plus costs of suit, but not attorney fees.

Ethan Allen appeals the judgment against it, and plaintiff cross-appeals the judgment in favor of Bly. Plaintiff does not argue or contend on appeal that Ethan Allen violated section 3(2) of the Illinois Act, which section prohibits conspiracies to restrain trade or commerce. We reverse as to the judgment against Ethan Allen in favor of plaintiff and affirm as to the judgment against plaintiff in favor of Bly.

## II

■ The first issue we are asked to address by Ethan Allen is whether the trial court correctly applied the law in finding that Ethan Allen violated section 3(3) of the Illinois Act, which provides that every person shall be deemed to have committed a violation of the Illinois Act if they:

> "(3) Establish, maintain, use, or attempt to acquire monopoly power over any substantial part of trade or commerce of this State for the purpose of excluding competition or of controlling, fixing, or maintaining prices in such trade or commerce." (Ill. Rev. Stat. 1985, ch. 38, par. 60—3(3).)

Section 11 of the Illinois Act provides, in pertinent part:

> "When the wording of this Act is identical or similar to that of a federal antitrust law, the courts of this State shall use the construction of the federal law by the federal courts as a guide

in construing this Act." (Ill. Rev. Stat. 1985, ch. 38, par. 60—11.)

Ethan Allen argues that the wording of section 3(3) of the Illinois Act is similar to that of section 2 of the Sherman Antitrust Act (Sherman Act) (15 U.S.C.A. §2 (West Supp. 1993)) and that the trial court should have followed Federal precedent in this case. The Federal case law addressing section 2 of the Sherman Act requires that a market-share analysis be made to determine if competition is sufficiently injured so that the monopolizing activities constitute a violation of the Illinois Act. *Eastman Kodak Co. v. Image Technical Services, Inc.* (1992), 504 U.S. 451, 119 L. Ed. 2d 265, 112 S. Ct. 2072; *Wigod v. Chicago Mercantile Exchange* (7th Cir. 1992), 981 F.2d 1510.

In the case before us, the trial court found that while there was a dearth of Illinois cases construing section 3(3) of the Illinois Act, *M B L (U S A) Corp. v. Diekman* (1985), 137 Ill. App. 3d 238, 484 N.E.2d 371, indicated that violation of section 3(3) of the Illinois Act is a *"per se"* violation which makes a market-share analysis or a rule-of-reason analysis unnecessary. The trial court further noted that section 3(3) of the Illinois Act and section 2 of the Sherman Act are different. Section 2 of the Sherman Act provides:

"Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a felony, and, on conviction thereof, shall be punished by fine not exceeding $10,000,000 if a corporation, or, if any other person, $350,000, or by imprisonment not exceeding three years, or by both said punishments, in the discretion of the court." (15 U.S.C.A. §2 (West Supp. 1993).)

Comparing the two statutes, the trial court reasoned that section 2 of the Sherman Act prohibits monopolizing, attempts to monopolize, and conspiracy to monopolize trade or commerce, while section 3(3) of the Illinois Act prohibits monopolizing only when it is done for the purpose of excluding competition or of controlling, fixing, or maintaining prices. After concluding that section 3(3) of the Illinois Act differs from the Federal antitrust statute because the Illinois Act is narrower in scope, the trial court stated that it had "to determine [from the evidence] whether or not a monopoly existed and whether the monopoly existed for the purpose of excluding competition or fixing prices."

As we will attempt to make clear, the trial judge correctly stated the issues in the case but he did not set the issue out completely. The trial court had to determine from the evidence whether Ethan Allen

had <u>monopoly</u> <u>power</u> <u>over</u> <u>any</u> <u>substantial</u> <u>part</u> <u>of</u> <u>trade</u> <u>or</u> commerce. It may have been that the failure to add the underlined words caused the trial judge to overlook the necessity of proof that Ethan Allen had monopoly power over a substantial part of trade or commerce in furniture. The trial judge did state in his order:

> "Where there are two viable entities doing the same thing in the same general area, and the supplier to the two entities runs one of the entities out of business and turns it all over to the other attempting to control the prices in the marketplace—that is the abuse referred to by the drafters of the statutes."

This statement and the disregarding of the deficiency in evidence as to relevant market and market share by the trial judge lead us to the conclusion that the trial judge was considering Ethan Allen furniture, a single brand, to be the relevant market. The court's reasoning does have a certain logic in that it follows that Ethan Allen would have a monopoly power over a substantial part of trade or commerce in Ethan Allen products. Similarly, Ethan Allen ceased doing business with plaintiff, one of two outlets for Ethan Allen products was eliminated, and thus, competition was eliminated as to Ethan Allen products.

It is not clear from the trial court's ruling as to whether the trial court applied the construction of Federal law by the Federal courts as a guide in construing the Illinois Act. The trial judge seemed to have used the *"per se"* violation concept developed by the Federal courts in reaching his decision. "[P]er se rules are appropriate only for 'conduct that is manifestly anticompetitive,' [citation], that is, conduct ' "that would always or almost always tend to restrict competition and decrease output," ' [citations]. See also *** *National Society of Professional Engineers v. United States*, 435 U.S. 679, 692, 55 L. Ed. 2d 637, 98 S. Ct. 1355, 1365 (1978) (agreements are *per se* illegal only if their 'nature and necessary effect are so plainly anticompetitive that no elaborate study of the industry is needed to establish their illegality')." *Business Electronics Corp. v. Sharp Electronics Corp.* (1988), 485 U.S. 717, 723-24, 99 L. Ed. 2d 808, 816, 108 S. Ct. 1515, 1519.

Plaintiff argues, however, that the wording of the Illinois Act is different from the wording of the Sherman Act and, therefore, the trial judge was correct in not using the principles developed by the Federal courts in construing section 2 of the Sherman Act as a guide in construing the Illinois Act. It is ironic that plaintiff then spends the remainder of his argument maintaining that the Federal courts' concept of the *"per se"* rule should apply to this case.

■ It is quite clear that the Federal law should be used as a guide in construing section 3(3) of the Illinois Act. Our colleagues in the First and Second District Appellate Courts have specifically ruled that section 2 of the Sherman Act is analogous to section 3(3) of the Illinois Act. (See *Maywood Sportservice, Inc. v. Maywood Park Trotting Association, Inc.* (1973), 14 Ill. App. 3d 141, 302 N.E.2d 79; *Ray Dancer, Inc. v. D M C Corp.* (1992), 230 Ill. App. 3d 40, 594 N.E.2d 1344.) The "Bar Committee Comments—1967" to section 3(3) (740 ILCS 10/3, Bar Committee Comments—1967, at 18 (Smith-Hurd 1992)) have indicated for years that while section 3(3) is narrower in scope than section 2 of the Sherman Act, section 2 of the Sherman Act should be used in construing section 3(3). The "Historical and Practice Notes—1970" by Phillip W. Tone and John G. Stiffler in Smith-Hurd Illinois Annotated Statutes also indicate that the scope of section 3(3) is essentially that of section 2 of the Sherman Act, but somewhat more restricted. (Ill. Ann. Stat., ch 38, par. 60—3, Historical and Practice Notes—1970, at 463 (Smith-Hurd 1977).) In *People v. Crawford Distributing Co.* (1972), 53 Ill. 2d 332, 291 N.E.2d 648, our supreme court stated that "the Federal antitrust experience under the Sherman Act is applicable to questions arising under the Illinois Antitrust Act and can serve as a useful guide." (*Crawford Distributing Co.*, 53 Ill. 2d at 339, 291 N.E.2d at 652.) In *People ex rel. Scott v. College Hills Corp.* (1982), 91 Ill. 2d 138, 435 N.E.2d 463, our supreme court once again stated that in construing the Illinois Act, they were guided by analogous provisions of Federal legislation. The Federal district and appellate courts used section 2 of the Sherman Act in construing the Illinois Act. See *State of Illinois ex rel. Hartigan v. Panhandle Eastern Pipe Line Co.* (C.D. Ill. 1990), 730 F. Supp. 826, *aff'd* (7th Cir. 1991), 935 F.2d 1469.

The point to this short and admittedly incomplete history of the Illinois Act is that our legislature, the supreme court, the First and Second District Appellate Courts, the Federal district and appellate courts, and legal scholars all believe that Federal court cases construing the Sherman Act should be used as a guide in construing the Illinois Act. Thus, in determining what proof is needed in order to establish the presence of a "monopoly" or what is "trade or commerce," we should be guided by section 2 of the Sherman Act and the Federal cases construing such. We cannot simply say the words are not similar or identical when in fact the words and concepts are similar and identical. Both Acts deal with monopolies, unfair trade practices, and the attempt to monopolize trade or commerce.

Admittedly, section 3(3) of the Illinois Act does not pertain to interstate commerce or a conspiracy to monopolize. There are also a growing number of Illinois cases construing section 3 of the Illinois Act, so that references to Federal cases are not as necessary as they were in the past. Saying we should be guided by the Federal cases does not mean that we are bound to strictly apply the Federal court's interpretation of the Sherman Act to the Illinois Act. We recognize that the Illinois Act requires more proof than section 2 of the Sherman Act for a court to find that a defendant violated section 3(3) of the Illinois Act, in that not only must the plaintiff prove that defendant established, maintained, used, or attempted to acquire monopoly power over any substantial part of trade or commerce but, in addition, plaintiff must prove that defendant did so for the purpose of excluding competition or controlling, fixing, or maintaining prices in that trade or market. Whereas, under the Sherman Act, proof of the purpose is not required for a violation of section 2 of the Sherman Act. The fact that the Illinois Act requires more proof against a defendant in most instances does not mean that we should totally ignore the Federal law as a guide.

The trial court cited *M B L (U S A) Corp. v. Diekman* (1985), 137 Ill. App. 3d 238, 484 N.E. 2d 371, for the proposition that a violation of section 3(3) is a *per se* violation, thereby making a market-share analysis unnecessary. It is not clear from the reading of *Diekman* that *Diekman* holds such. In *Diekman*, the parties were at the pleading stage when the trial court dismissed Diekman's amended counterclaim as not stating a cause of action under the Illinois Act. The counterclaim used the words of section 3(3) in alleging a monopoly power over a substantial part of trade or commerce in the sale and distribution of urethane timing belts. But the counterclaim also used the words contained in section 3(2) of the Illinois Act by alleging that counterdefendants conspired and combined to establish this monopoly over the sale or distribution of urethane timing belts by MBL (USA), a counterdefendant, purchasing from Meeder, a counterdefendant (who appears to have been a former competitor of MBL (USA)), covenants not to compete that were given by counterplaintiff and agreeing between themselves to threaten and file baseless litigation against counterplaintiff, a potential competitor. *Diekman* cited, as its authority for reversing the dismissal of the counterclaim and in saying that the allegations were *"per se"* violations of the Illinois Antitrust Act, *People ex rel. Fahner v. Carriage Way West, Inc.* (1981), 88 Ill. 2d 300, 430 N.E.2d 1005, which case concerned the dismissal of a com-

plaint that alleged a conspiracy by competitors to fix prices as prohibited by section 3(1) of the Illinois Act.

■ There is no question that when competitors conspire to fix prices, production, or services, a violation of section 3(1) of the Illinois Act occurs and it is a *"per se"* violation requiring only proof that the competitors conspired. (See *Carriage Way West, Inc.*, 88 Ill. 2d at 309 (for a discussion of such).) Keep in mind that *"per se"* violations are normally agreements between competitors or agreements that would restrict competition and decrease output. No market analysis is needed for a section 3(1) violation, because the agreement in and of itself is a violation. There is also no question that when persons contract, combine, or conspire to unreasonably restrain trade or commerce such can be a violation of section 3(2) of the Illinois Act. However, the supreme court pointed out in *People ex rel. Scott v. College Hills Corp.* (1982), 91 Ill. 2d 138, 435 N.E.2d 463, that violations of sections 3(2) and 3(4) require, in addition to proof of the conspiracy, a determination of a geographic market that corresponds to commercial realities and is economically significant. The reason the market analysis is needed to prove a violation of sections 3(2) and 3(4) is that section 3(2) requires a showing that defendant's acts unreasonably restrained *trade or commerce* and section 3(4) requires a showing that competition was substantially lessened or a monopoly was created in any line of *commerce*. The fact that section 3(3) requires the proof of a monopoly over *any substantial part of trade or commerce* indicates even more specifically than sections 3(2) and 3(4) do that a market analysis is a necessity.

*Diekman*, therefore, does not stand for the proposition that proof of a violation of section 3(3) is a *"per se"* violation so that no further proof is required under section 3(3) as to a monopoly by a defendant over a substantial part of trade or commerce. *Diekman* stands for the proposition that, if a complaint alleges a monopoly by defendants and a conspiracy by defendants to exclude another competitor from competition, such a complaint will withstand a motion to dismiss, as all pleaded facts are presumed to be true for purposes of the motion to dismiss. *Diekman* does not relieve the plaintiff from the necessity of proving the allegations contained in the complaint at the trial.

The plaintiff did not present any proof of a relevant market for furniture or a market analysis showing the percent of the furniture market held by defendant. Ethan Allen presented uncontradicted testimony that the relevant market was the metropolitan St. Louis area and that it held not more than 2% of the relevant market. The trial judge, even though he stated in his order that he had to determine

from the evidence whether a monopoly existed, did not make a determination of the relevant market or the market share held by defendant. Nor did he ever find that Ethan Allen had a monopoly over a substantial part of the furniture trade or commerce. It is difficult to conceive, nor does plaintiff suggest, how one could prove a "monopoly power over a substantial part of trade or commerce" without some showing as to what the trade and commerce was in the merchandise in question and what part of the trade or commerce that Ethan Allen controlled. We cannot presume that a defendant has monopoly powers simply because plaintiff alleges such. We cannot presume that Ethan Allen violated the criminal laws of this State merely because it did business in Illinois. We cannot presume that Ethan Allen furniture is the only furniture sold in the trade or commerce of Illinois or the metropolitan St. Louis area.

Turning now to plaintiff's argument, and the trial judge's apparent interpretation of section 3(3), that since Ethan Allen is the sole manufacturer and supplier in Ethan Allen products to retailers, there was a monopoly over a substantial part of trade and commerce in Ethan Allen products. If we were to adopt plaintiff's argument, all one would have to do in order to prove a violation of the criminal law (Ill. Rev. Stat. 1989, ch. 38, par. 60—3(3)) by a defendant would be to show that defendant manufactured a product or sold franchises for a copyrighted name, talked and disagreed with plaintiff about prices for its product, and caused plaintiff a loss by discharging or terminating plaintiff's relationship with defendant. Plaintiff is arguing that all attempts by a manufacturer or franchisor to control, maintain, or fix prices the dealer or franchisee charges the consumers are illegal under section 3(3). Therefore, if plaintiff were correct, the hamburger franchisor, whose franchisee may have 15 fast-food competitors within three blocks and who did not want to cooperate in a national campaign for 99-cent hamburgers, could not terminate the franchise of a franchisee for fear of being held to have violated the antitrust laws of Illinois. It may even be that under the plaintiff's theory a car dealer, who had the only agency in the town or county, could not fire his employee who sold a car at less than what the dealer set as a minimum price for fear that he would be violating the restraint of trade laws. We would be upsetting business practices developed over the centuries, even though they do not substantially affect or restrain trade or commerce.

"Trade or commerce" is defined as including "all economic activity involving or relating to any commodity or service," and "commodity" means "any kind of real or personal property." (Ill. Rev. Stat.

1985, ch. 38, par. 60—4.) "Commodity" is not limited to a specific brand, nor is "trade and commerce" limited to a specific brand.

If we were to construe section 3(3) of the Illinois Act to mean monopoly over a specific brand of merchandise, then the word "monopoly" would be superfluous as every manufacturer has a monopoly over its product or brand name. Even in those cases where the manufacturer had a 100% share of a relevant market, the plaintiff would not pay for an expensive market analysis to prove such, as such analysis would be unnecessary and apparently irrelevant. The words "[e]stablish, maintain, use, or attempt to acquire" would be superfluous, because every manufacturer establishes, maintains, uses, and attempts to acquire complete control over its product. In fact, some manufacturers attempt to obtain patents and copyrights over products and names. Surely, they are not violating Illinois law. The words "over a substantial part" would be even more superfluous, because every manufacturer has a monopoly over 100% of its product. The words "trade or commerce" would be superfluous, because the only trade or commerce we would be discussing would be trade and commerce in the manufacturer's product. Applying the plaintiff's construction to section 3(3) without the superfluous language, it would read: "Every person shall be deemed to have committed a violation of this Act who shall: control, fix, or maintain prices of that person's product." Such a law would make every businessperson in Illinois, no matter if the business has only one-hundredth of 1% of the market and has 100 competitors, guilty of restraint of trade.

When we review the Federal cases as to whether there can be a monopoly in a particular commodity, the leading case of *United States v. E.I. Du Pont de Nemours & Co.* (1956), 351 U.S. 377, 100 L. Ed. 1264, 76 S. Ct. 994, sets out:

> "The ultimate consideration in such a determination is whether the defendants control the price and competition in the market for such part of trade or commerce as they are charged with monopolizing. Every manufacturer is the sole producer of the particular commodity it makes but its control in the above sense of the relevant market depends upon the availability of alternative commodities for buyers: *i.e.*, whether there is a cross-elasticity of demand between cellophane and the other wrappings. This interchangeability is largely gauged by the purchase of competing products for similar uses considering the price, characteristics and adaptability of the competing commodities." (*E.I. Du Pont*, 351 U.S. at 380-81, 100 L. Ed. at 1272-73, 76 S. Ct at 999.)

We must ask whether there were competing products to Ethan Allen furniture. " 'When a product is controlled by one interest, without substitutes available in the market, there is monopoly power.' " (*National Collegiate Athletic Association v. Board of Regents* (1984), 468 U.S. 85, 112, 82 L. Ed. 2d 70, 91, 104 S. Ct. 2948, 2966, quoting *E.I. Du Pont*, 351 U.S. at 394, 100 L. Ed. at 1280, 76 S. Ct. at 1006.) The burden was on plaintiff to prove that there were no substitutes available in the market for Ethan Allen furniture. Ethan Allen maintains that not only were there substitutes available for its furniture, but those substitutes controlled 98% of the relevant market. Plaintiff never denied or disputed this claim.

Plaintiff, and apparently the trial court, used the concepts in Federal cases involving vertical price fixing. (See *Business Electronics Corp. v. Sharp Electronics Corp.* (1988), 485 U.S. 717, 99 L. Ed. 2d 808, 108 S. Ct. 1515; *Monsanto Co. v. Spray-Rite Service Corp.* (1984), 465 U.S. 752, 79 L. Ed. 2d 775, 104 S. Ct. 1464.) Vertical price fixing in those cases was in violation of section 1 of the Sherman Act. (15 U.S.C.A. §1 (West Supp. 1993).) Plaintiff argues that Federal law should not apply at all as a guide to interpreting section 3(3) of the Illinois Act, but plaintiff is really being inconsistent if he wishes now to use the concepts under section 1 of the Sherman Act to interpret section 3(3) of the Illinois Act. There is no authority anywhere to support this argument. Suffice it to say that those cases and the authorities cited therein discuss the illegality of conspiracies and agreements to fix prices. There is no evidence of an agreement or conspiracy to vertically fix prices in this case, as we will discuss later in relation to the denial of the claim against Bly. "Independent action is not proscribed. A manufacturer of course has the right to deal, or refuse to deal, with whomever it likes, as long as it does so independently. [Citations.] Under *Colgate*, the manufacturer can announce its resale prices in advance and refuse to deal with those who fail to comply." *Monsanto*, 465 U.S. at 761, 79 L. Ed. 2d at 783-84, 104 S. Ct. at 1469.

■ Even assuming *arguendo* that there was an attempted vertical price agreement or restraint in this case, the threshold requirement under section 3(3), that plaintiff prove that defendant established, maintained, used, or attempted to acquire a monopoly over any substantial part of trade or commerce, was not met. The lowest percentage of the market share that we could find in cases before the Supreme Court of the United States that constituted a monopoly by a defendant or defendants was 66.6%. (*American Tobacco Co. v. United States* (1946), 328 U.S. 781, 90 L. Ed. 1575, 66 S. Ct. 1125.) Ethan

Allen with its 2% or less of the market in the metropolitan St. Louis area did not even begin to approach the market control or power necessary to constitute a substantial part of trade or commerce. The law need not concern itself with nonmonopolists raising prices, as the free market will regulate and punish those who needlessly raise prices. Thus, the trial court erred in applying the law and in presuming that Ethan Allen had a monopoly power which constituted a violation of the Illinois Act.

■ In plaintiff's cross-appeal, it first argues that the court erred in finding that Bly did not conspire to force it out of the market place. Plaintiff submits that the trial court's judgment in favor of Bly was against the manifest weight of the evidence. In reviewing a bench trial, we will not disturb the trial court's finding unless the trial court's holding is manifestly against the weight of the evidence. (*Schulenburg v. Signatrol, Inc.* (1967), 37 Ill. 2d 352, 226 N.E.2d 624; *Orchard Shopping Center, Inc. v. Campo* (1985), 138 Ill. App. 3d 656, 485 N.E.2d 1248.) Where testimony is contradictory, the trial judge as the trier of fact is in a superior position to observe the conduct of testifying witnesses, to determine their credibility, and to weigh the evidence. (*Schulenburg,* 37 Ill. 2d at 356, 226 N.E.2d at 626.) A careful review of the record shows that the trial court's judgment in favor of Bly was not against the manifest weight of the evidence. There was testimony by Jack Tripp, the former Ethan Allen employee, that he knew of no agreements between Ethan Allen and Bly to terminate plaintiff. Moreover, plaintiff does not present any conflicting evidence that there was, in fact, such an agreement between Bly and Ethan Allen or that Bly conspired with Ethan Allen. Although plaintiff cites the trial court's statement that Bly would probably benefit from plaintiff's demise as an Ethan Allen dealer, plaintiff does not offer any proof that Bly conspired to achieve that status. Clearly, the fact that Bly benefits from plaintiff's loss does not, in and of itself, constitute an antitrust violation. The circumstantial evidence that plaintiff would have us scrutinize simply does not warrant a reversal of the trial court's judgment.

For all of the foregoing reasons, we reverse the judgment against Ethan Allen and affirm the judgment in favor of Bly.

Defendant Ethan Allen requested in its prayer for relief that the judgment be reversed and a judgment be entered in Ethan Allen's favor. In the alternative, Ethan Allen requested that this case be remanded for a new trial. The parties did not discuss or brief what a proper disposition should be if this court reversed the judgment. Normally, the appropriate action, when a case is tried under an incorrect

theory of law, is to reverse and remand for a new trial (*Sparling v. Peabody Coal Co.* (1974), 59 Ill. 2d 491, 322 N.E.2d 5.) We accordingly are granting Ethan Allen's alternative request by remanding this cause for a new trial.

Affirmed in part; reversed and remanded in part.

RARICK, J., concurs.

JUSTICE GOLDENHERSH, dissenting:
I respectfully dissent from the majority's reversal on issue (1). In affirming the judgment concerning Bly, I concur.

In my belief the majority mistakenly construes, and assumes, that section 3(3) of the Illinois Antitrust Act (the Illinois Act) (Ill. Rev. Stat. 1985, ch. 38, par. 60—3(3)) is sufficiently similar to section 2 of the Sherman Antitrust Act (Sherman Act) (15 U.S.C.A. §2 (West Supp. 1993)) so that Federal precedents are controlling in the interpretation of the Illinois Act. A closer examination of the language of the two statutes shows they are not sufficiently similar, as the trial court correctly found. The historical notes and bar committee comments also support this.

The trial court correctly applied the law in finding that Ethan Allen violated section 3(3) of the Illinois Act, which provides that every person shall be deemed to have committed a violation of the Illinois Act if they:

"(3) Establish, maintain, use, or attempt to acquire monopoly power over any substantial part of trade or commerce of this State for the purpose of excluding competition or of controlling, fixing, or maintaining prices in such trade or commerce." (Ill. Rev. Stat. 1985, ch. 38, par. 60—3(3).)

Section 11 of the Illinois Act provides, in pertinent part:

"When the wording of this Act is identical or similar to that of a federal antitrust law, the courts of this State shall use the construction of the federal law by the federal courts as a guide in construing this Act." Ill. Rev. Stat. 1985, ch. 38, par. 60—11.

In the case before us, the trial court found that section 3(3) of the Illinois Act is worded differently than section 2 of the Sherman Act, which reads:

"Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty

of a felony, and, on conviction thereof, shall be punished by fine not exceeding $10,000,000 if a corporation, or, if any other person, $350,000, or by imprisonment not exceeding three years, or by both said punishments, in the discretion of the court." 15 U.S.C.A. §2 (West Supp. 1993).

Upon comparing the two statutes, the trial court correctly reasoned that section 2 of the Sherman Act prohibits monopolizing, attempts to monopolize, and conspiracy to monopolize trade or commerce, while section 3(3) of the Illinois Act prohibits monopolizing only when it is done for the purpose of excluding competition or of controlling, fixing, or maintaining prices. After concluding that section 3(3) of the Illinois Act differs significantly from the Sherman Act, the trial court found little value in Federal precedent and declined to use the construction of the Federal law by Federal courts in resolving this case.

Ethan Allen argues that the trial court erred in declining to apply Federal law to the case at bar. In support of this argument, Ethan Allen cites *Maywood Sportservice, Inc. v. Maywood Park Trotting Association, Inc.* (1973), 14 Ill. App. 3d 141, 302 N.E.2d 79, where our colleagues on the First District Appellate Court held that section 2 of the Sherman Act is substantially the same as that of section 3(3) of the Illinois Act. (*Maywood Sportservice, Inc.*, 14 Ill. App. 3d at 151, 302 N.E.2d at 86; see also *Ray Dancer, Inc. v. D M C Corp.* (1992), 230 Ill. App. 3d 40, 594 N.E.2d 1344.) I would decline to adopt that position, and I agree with the trial court that the two statutes are not identical or similar. The language of the two statutes, as well as the comments to the Illinois Act, stand contrary to the position of both cases. The lack of analysis in depth of the two statutes in *Maywood* and *Ray Dancer* suggests that this was not at issue in either case. We are free, however, to conduct a more extensive statutory analysis, which I think leads to a conclusion contrary to the majority's position. Further, the General Assembly's enactment of section 11 indicates an intent that Illinois antitrust law not be in total lockstep with the Federal Acts; the majority's position renders section 11 useless. Both the language and the intent of the State and Federal Acts are different. Therefore, section 11 of the Illinois Act does not apply, and we should not consider Federal precedent as binding.

The comments to the statute further support this conclusion. As noted in the historical and practice notes concerning subsection 3(3):

"Subsection (3) prohibits establishing, maintaining, acquiring, or attempting to acquire monopoly power in order to exclude competition or fix prices. Its scope, essentially that of Section 2

of the Sherman Act, is somewhat more restricted than the federal law.

\* \* \*

Subsection 3(3) of the Illinois Act is narrower than its federal counterpart. It not only adopts the 'abuse' theory, but it covers only two types of abuses, albeit the two which are important from a practical standpoint. It prohibits monopolizing only when it is done for the purpose of excluding competition or fixing prices." Ill. Ann. Stat., ch. 38, par. 60—3, Historical and Practice Notes—1970, at 463 (Smith-Hurd 1977).

Similarly, the bar committee comments to subsection 3(3) state:

"This section would penalize the monopolist only when he acted for the forbidden purposes of excluding competition or of fixing prices. It is, therefore, directed only to abuses and attempted abuses of monopoly power rather than to its mere existence. To that extent the prohibition is somewhat narrower than that applied to Section 2 of the Sherman Act and is also somewhat more specific." (Ill. Ann. Stat., ch. 38, par. 60—3(3), Bar Committee Comments—1967, at 454 (Smith-Hurd 1977).)

Again, the cases cited by the majority for the proposition that section 3(3) and the Federal Act are identical do not go into any appreciable depth of analysis of the two Acts. When we analyze the comments as well as the statutory language, we must conclude that the Acts are different and therefore, pursuant to legislative intent, should be construed differently as section 11 allows.

Similarly, the trial court was not inconsistent in using Federal *per se* violation cases for guidance in determining that issue while stating that Federal cases are not binding on the court, as noted by the majority. As noted by the majority, our supreme court has indicated that the Federal precedents can be useful guidance; they do not, however, necessarily fall under section 11 and become binding precedent.

As the trial court correctly points out, there is a dearth of Illinois cases addressing section 3(3) of the Illinois Act. *M B L (U S A) Corp. v. Diekman* (1985), 137 Ill. App. 3d 238, 484 N.E.2d 371, holds that a violation of section 3(3) of the Illinois Act is a *"per se"* violation of the Act, which makes a market-share analysis or rule-of-reason analysis unnecessary. Accordingly, we should hold that the trial court applied the correct principles of law in finding that Ethan Allen violated section 3(3) of the Illinois Act.

Although Ethan Allen does not dispute the existence or amount of plaintiff's actual damages, Ethan Allen claims that the damages are not recoverable as a matter of law. In support of this argument,

Ethan Allen asserts that Federal law precludes the type of damages plaintiff received in this case. We should properly hold that Federal law is not controlling on this case, however. Section 7(2) of the Illinois Act provides, in pertinent part:

> "(2) Any person who has been injured in his business or property, or is threatened with such injury, by a violation of Section 3 of this Act may maintain an action in the Circuit Court for damages, or for an injunction, or both, against any person who has committed such violation. *** In an action for damages, if injury is found to be due to a violation of *** [ ] *** subsections (2) or (3) of Section 3 of this Act, the person injured shall recover the actual damages caused by the violation, together with costs and reasonable attorney's fees ***." (Ill. Rev. Stat. 1991, ch. 38, par. 60—7(2).)

Ethan Allen's argument and supporting cases are inapplicable to the case at bar, and the language of the Illinois Act clearly allows for actual damages and attorney fees. Since Ethan Allen did not dispute plaintiff's evidence at trial on the issue of damages and does not claim on appeal that plaintiff did not sustain actual damages, we need not further discuss this issue.

As stated earlier, section 7(2) of the Illinois Act provides that persons injured by violations of section 3(3) "shall recover the actual damages caused by the violation, together with costs and reasonable attorney's fees." (Ill. Rev. Stat. 1991, ch. 38, par. 60—7(2).) In *Fumarolo v. Chicago Board of Education* (1990), 142 Ill. 2d 54, 566 N.E.2d 1283, our supreme court held:

> "The fundamental of statutory construction is to ascertain and give effect to the intent of the legislature. [Citation.] In construing statutory provisions as being mandatory or directory, the word 'shall' is regarded as indicative of a mandatory legislative intent. [Citations.] This court has recognized, however, that, while 'shall' ordinarily indicates a mandatory legislative intention, it may be construed as permissive if the context so indicates. [Citations.]

> Legislative intent can be ascertained from a consideration of the entire Act, its nature, its object and the consequences that would result from construing it one way or the other." *Fumarolo*, 142 Ill. 2d at 96, 566 N.E.2d at 1301-02.

Here, the language of section 7(2) indicates a mandatory construction. In that same section, the statute directs the court to use discretion in awarding treble damages. An examination of the General Assembly's omission of that directive to use discretion with regard to

attorney fees and its use of the word "shall" indicates that the General Assembly intended that the award of attorney fees be mandatory in a case such as this. I would therefore reverse the trial court's order denying plaintiff attorney fees and remand the case for determination of plaintiff's reasonable attorney fees.

For the foregoing reasons, I respectfully dissent.